OHIO EX REL. CLARKE v. DECKEBACH, AUDITOR.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 272. Argued April 18, 19, 1927.—Decided May 16, 1927.

1. Construction of the pleadings by the state supreme court as sufficiently drawing in question the validity of an ordinance under a treaty will be followed by this Court on review of the judgment upholding the ordinance. P. 394.

2. The provision of the Treaty with Great Britain (July 3, 1815, August 6, 1827) that "the merchants and traders of each nation . . . shall enjoy the most complete protection and security for their commerce," does not apply to proprietors of places of amusement, like a billiard hall. P. 395.

3. A city ordinance prohibiting the issuance to aliens of licenses to conduct pool and billiard rooms, does not violate the rights of aliens under the equal protection clause of the Fourteenth Amendment. So *held* in view of the character of the business, and the absence of ground for concluding that the legislative council acted without a rational basis in determining that aliens as a class were disqualified by their associations, experiences and interests, from conducting the business, and in excluding the entire class rather than its objectionable members selected by more empirical methods. P. 396.

113 Oh. St. 347, affirmed.

ERROR to a judgment of the Supreme Court of Ohio dismissing a petition for a writ of mandamus to require the Auditor of Cincinnati to issue a license to Clarke, the petitioner.

*Mr. George S. Hawke* for plaintiff in error.

*Mr. John D. Ellis,* City Solicitor of Cincinnati, for defendant in error.

MR. JUSTICE STONE delivered the opinion of the Court.

An ordinance, No. 76-1918, of the City of Cincinnati, requires the licensing of pool and billiard rooms, and prohibits the issue of licenses to aliens. Plaintiff in error petitioned the Supreme Court of Ohio for a writ of mandamus commanding defendant in error, the auditor of Cincinnati, to grant him a license to conduct a billiard and pool room in that city. The petition alleged that plaintiff was a subject of the King of England and that he had been refused a license solely because he was not a citizen. It drew in question the validity of the ordinance as violating Art. I of the treaty between Great Britain and the United States of July 3, 1815, 8 Stat. 228; August 6, 1827, 8 Stat. 361; 1 Malloy, Treaties, 624, 645, and as denying the equal protection of the laws guaranteed by the Fourteenth Amendment.

Defendant answered, traversing the allegation of citizenship, and asserting that billiard and pool rooms in the City of Cincinnati are meeting places of idle and vicious persons; that they are frequented by lawbreakers and other undesirable persons, and contribute to juvenile delinquency; that numerous crimes and offenses have been committed in them and consequently they require strict police surveillance; that non-citizens as a class are less familiar with the laws and customs of this country than native born and naturalized citizens; that the maintenance of billiard and pool rooms by them is a menace to society and to the public welfare, and that the ordinance is a reasonable police regulation passed in the interest of and for the benefit of the public.

On plaintiff's motion, the Supreme Court of Ohio gave judgment on the pleadings, dismissing the petition. 113 Oh. St. 347. In an earlier case, *State ex rel Balli* v. *Carrel,* 99 Oh. St. 285, it had held that the ordinance in question did not deny any rights guaranteed by the Federal Constitution. The case comes here on writ of error, Jud. Code, § 237 as amended, the plaintiff renewing here the contentions made below.

At the outset defendant insists that plaintiff has not established that he is entitled to the benefit of the treaty since his allegation of citizenship is not admitted on the face of the pleadings. But the Supreme Court of Ohio has construed the pleadings as sufficient to draw in question the validity of the ordinance under the treaty. Hence we need not concern ourselves with those refinements of the local law of pleading which, it is said, enable defendant to justify his refusal to issue a license because of plaintiff's assertion of British citizenship, and at the same time deny that plaintiff has established citizenship entitling him to the protection of the treaty. See *Forsyth* v. *Vehmeyer,* 177 U. S. 177, 180; *Allen* v. *Alleghany Co.,* 196 U. S. 458, 465, 466; *Atlantic Coast Line R. R.*

v. *Mims,* 242 U. S. 532, 535; *Nevada-California-Oregon
Ry.* v. *Burrus,* 244 U. S. 103; *Lee* v. *Central of .Georgia
Ry.,* 252 U. S. 109.

The application of the treaty to the present case requires but brief consideration. As stated in the title its purpose is "to regulate the commerce" between the two countries. Article I, which it is said affords the protection against the present discrimination, is printed in the margin.[1] It guarantees "reciprocal liberty of commerce" between the territories of the signatories. The privileges secured by it to the inhabitants of the two countries, so far as relevant to the present controversy, pertain to and are intended to facilitate commerce. The clause suggested as pertinent reads: "and, generally, the merchants and traders of each nation, respectively, shall enjoy the most complete protection and security for their commerce." Even if assumed, as argued, that the proprietor of a pool room may for some purposes be regarded as engaged in a trade, the word being used as synonymous with occupation or employment, he does not engage in commerce within the meaning of a treaty which merely extends to "merchants and traders" "protection and security for their commerce." See *Bobe* v. *Lloyds,* 10 Fed. (2d) 730, 734. It would be an extravagant applica-

---

[1] "Art. I. There shall be between the territories of the United States of America, and all the territories of his Britannick majesty in Europe, a reciprocal liberty of commerce. The inhabitants of the two countries, respectively, shall have liberty freely and securely to come with their ships and cargoes to all such places, ports, and rivers, in the territories aforesaid, to which other foreigners are permitted to come, to enter into the same, and to remain and reside in any parts of the said territories, respectively; also to hire and occupy houses and warehouses for the purposes of their commerce; and, generally, the merchants and traders of each nation, respectively, shall enjoy the most complete protection and security for their commerce, but subject always to the laws and statutes of the two countries, respectively."

tion of the language quoted to say that it could be extended to include the owner of a place of amusement who does not necessarily buy, sell or exchange merchandise or otherwise participate in commerce.

*Asakura* v. *Seattle,* 265 U. S. 332, relied on by plaintiff, does not support his contention. It was there held that the treaty with Japan of February 21, 1911, 37 Stat. 1504, was violated by a municipal ordinance prohibiting the granting of pawnbrokers' licenses to non-citizens. That treaty secured to the citizens of Japan the right to " enter, travel and reside " in the United States and " to carry on trade, wholesale and retail . . . and generally to do anything incident to or necessary for trade." This language, which is plainly broader in some respects than that of the British treaty, was held to embrace within its protection a Japanese pawnbroker whose business, in contrast to that of plaintiff, necessarily involved the lending of money on the security of merchandise and the sale of merchandise when necessary to realize on the security.

The objections to the constitutionality of the ordinance are not persuasive. Although the Fourteenth Amendment has been held to prohibit plainly irrational discrimination against aliens, *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Truax* v. *Raich,* 239 U. S. 33; *In re Tiburcio Parrott,* 1 Fed. 481; *In re Ah Chong,* 2 Fed. 733; *Ho Ah Kow* v. *Nunan,* 5 Sawy. 552, 12 Fed. Cases, #6546; *Wong Wai* v. *Williamson,* 103 Fed. 1; *Fraser* v. *McConway & Torley Co.,* 82 Fed. 257, it does not follow that alien race and allegiance may not bear in some instances such a relation to a legitimate object of legislation as to be made the basis of a permitted classification. *Patsone* v. *Pennsylvania,* 232 U. S. 138; *Crane* v. *New York,* 239 U. S. 195, 198; *Terrace* v. *Thompson,* 263 U. S. 197; *Porterfield* v. *Webb,* 263 U. S. 225; *Webb* v. *O'Brien,* 263 U. S. 313;

*Frick* v. *Webb*, 263 U. S. 326; *Cockrill* v. *California*, 268 U. S. 258; cf. *McCready* v. *Virginia*, 94 U. S. 391.

The admitted allegations of the answer set up the harmful and vicious tendencies of public billiard and pool rooms, of which this Court took judicial notice in *Murphy* v. *California*, 225 U. S. 623. The regulation or even prohibition of the business is not forbidden. *Murphy* v. *California, supra.* The present regulation presupposes that aliens in Cincinnati are not as well qualified as citizens to engage in this business. It is not necessary that we be satisfied that this premise is well founded in experience. We cannot say that the city council gave unreasonable weight to the view admitted by the pleadings that the associations, experiences and interests of members of the class disqualified the class as a whole from conducting a business of dangerous tendencies.

. It is enough for present purposes that the ordinance, in the light of facts admitted or generally assumed, does not preclude the possibility of a rational basis for the legislative judgment and that we have no such knowledge of local conditions as would enable us to say that it is clearly wrong. *Fort Smith Light & Traction Co.* v. *Board of Improvement, ante,* p. 387.

Some latitude must be allowed for the legislative appraisement of local conditions, *Patsone* v. *Pennsylvania, supra,* 144; *Adams* v. *Milwaukee,* 228 U. S. 572, 583, and for the legislative choice of methods for controlling an apprehended evil. It was competent for the city to make such a choice, not shown to be irrational, by excluding from the conduct of a dubious business an entire class rather than its objectionable members selected by more empirical methods. See *Westfall* v. *United States, ante,* p. 256.

*Judgment affirmed.*