**SUNRAY OIL CO. v. THOMPSON et al.**

**No. 591.**

District Court, N. D. Texas.

Feb. 26, 1936.

Edward Howell, of Oklahoma City, Okl., Paul Taliaferro, of Tulsa, Okl., and Sanders & Scott, of Amarillo, Tex., for complainant.

William McCraw, Atty. Gen., and William Madden Hill, Asst. Atty. Gen., for respondents.

Before HUTCHESON, Circuit Judge, and ATWELL and McMILLAN, District Judges.

ATWELL, District Judge.

This is on motion to dismiss and on application for temporary injunction.

The Sunray Oil Company is a corporate citizen of the state of Oklahoma. It represents that it is engaged in the production of oil and gas in Moore county, Tex., where it operates a plant which cost it $100,000, and that it has a value in its oil and gas rights and interests in that county of more than $500,000. It complains of the Railroad Commission, the Attorney General, and the Governor of Texas, because of the alleged unconstitutionality of an act of the Forty-Fourth Legislature of the state of Texas, known as H.B. 782 (chapter 76 § 2) and H.B. No. 266 (chapter 120), which are article 6014 and article 6008 of Vernon's Annotated Civil Statutes. It complains that under this authority the defendant railway commissioners promulgated certain regulations effective in the latter part of 1935 under a misconception of the authority given, and that said regulations would destroy the complainant's property, because its wells produce gas and oil and water simultaneously, and that the ratio permitted by the law and the regulations thereunder make it impossible for the complainants to operate, because it cannot decrease either the oil, gas, or water without simultaneously decreasing the other two, and that such effort to decrease will result in a total loss of both oil and gas; that its situation is different from other gas-oil wells in the Panhandle area, in that its properties seem to be at the apex of a formation unlike that which surrounds and is found in the general body of the area; that, if it is denied the right to produce from its properties in a natural manner, both oil and gas will be wasted and totally lost to it; that, if the regulations made by the commission are permitted to be enforced against it, its wells will not only be lost to it, but its plant will likewise be rendered useless and of no value.

The respondents contend that the complainant appears without equity; that it has been engaged in the stripping business for several years, taking a small quantity of oil from a large quantity of gas, and "shooting" the gas into the air, and thus rendering it a total loss; that approximately 40,000,000 of cubic feet of gas per day are so wasted; that its wells should be reconditioned so that the flow of gas and oil could be kept within the legal limit; that one of the wells has an opening of approximately 300 feet; that the matter is still before the commission.

The complainant prays that the defendant be enjoined from making the statute and regulations applicable to its property. It also calls attention to the penalties of the law, and prays for protection from its arbitrary, unreasonable, and unconstitutional enforcement.

Testimony was submitted in the form of affidavits, which tend to show that really four wells are involved, each of which has a higher ratio than that permitted; the ratio being something over an hundred thousand cubic feet of gas to one barrel of oil. The complainant's witnesses support its contention that neither water, oil, nor gas can be cut off without destroying the wells, since the trinity is a simultaneous product, incapable of separation or diminution as to any one without a corresponding suppression of all; that the oil will be lost if the wells are shut down; that, if allowed to operate, approximately 400,000 barrels of oil will be recovered, but that such oil can not be saved or produced without the high quantity of gas; that hydrogen sulphide is present in such high percentage that the gas cannot be used for any commercial purpose.

The affidavits of the respondents claim that there would be no drainage of the complainant's wells, and classify them as gas wells that could be corrected as to a trinity of flow by remedial effort; that the physical condition of each well has a great deal to do with the present enormous loss of gas and the alleged inability to lower the amount of gas to the barrel of oil.

An affidavit was also introduced tending to show that the effect of this escaping gas was to injure trees and grass and to decrease rainfall and increase drouth; that approximately 43,000,000 cubic feet of gas escape from the complainant's stripping plant into the air every day, and that that has been going on for several years.

Complainant contends that the intention of the Legislature is not discoverable, since it provides that waste consists in the drowning with water any stratum capable of producing gas; that underground waste is prohibited, and yet it limits production of gas which, when applied to complainant, results in underground waste by drowning both gas and oil; that it provides that oil wells shall be produced with an efficient gas-oil ratio, but, when this is applied to its wells, it is inefficient; that it

defines casinghead gas as any gas or vapor indigenous of an oil stratum and produced therefrom with oil, and that it may be used for any beneficial purpose, which includes the making of gasoline, but in other provisions restricts the production thereof and prohibits the use for the manufacture of gasoline, except when the residue is burned for carbon black. It prohibits the escape into the open air, from wells producing both oil and gas, of gas in excess of the amount necessary to efficiently operate the well, but in other provisions restricts the production to inefficient operation. It directs proration by the commission so as to constitute an adjustment of the correlative rights of owners in a common reservoir, but in other clauses prorates so as to destroy some and give to others.

The argument and showing of complainant upon this alleged inconsistency of some portions of the acts is rather persuasive philosophy and might have greater force at another stage of its appearance. At the present time, however, it seems that the complainant should knock again at the door of the commission. Since the making of the rules and regulations under the authority given the commission by the Legislature, there has really been no thorough presentment of the complainant's alleged peculiar situation to that body, even though it was stated in oral argument that hearings had been sought and refused. It would seem that the complainant should pursue that course before asking the court for an injunction. Complainant does plead that the commission has heard its application for relief, but has denied it, "holding certain clauses and provisions of the conservation acts to be mandatory, preventing it from granting any exception, * * * thereby ordering complainant's wells to be closed in, or at best to be restricted in production in such manner as to amount to the closing thereof." This the respondents deny, and contend that the matter is still open.

In an affidavit by V. E. Cottingham, it is stated that at a hearing before the commission on October 17, 1935, different views were expressed by the Sunray and by the commission as to whether complainant's wells were oil or gas wells, within the meaning of House Bill No. 266 (Acts 1935, c. 120, Vernon's Ann.Civ.St. art. 6008); that at the conclusion of that hearing the representative of the complainant stated that further experiments would be made for the purpose of reducing the excessively high gas-oil ratio and that the commission would be advised as to the result; that these experiments could be made, and that the resulting trends could be established within 15 or 20 days; and that, if sincere efforts were made, 60 days would be sufficient to establish a definite opinion as to whether they were gas or oil wells. Up to January 31, 1936, complainant had not advised the commission as to any experiment being carried on with reference to the wells.

In a recent affidavit, dated February 6, 1936, Mr. Howell shows that he sought to reopen the matter before the commission, and that on February 3, upon the receipt of that application, the commission advised the complainant that, since the complainant had sought the court, the commission did not feel that it would be appropriate to have the hearing or to enter an order. This position was correct.

The Supreme Court in Petersen Baking Company v. Bryan, 290 U.S. 570, 575, 54 S.Ct. 277, 279, 78 L.Ed. 505, 90 A.L.R. 1285, said that: "Where one complains that regulations promulgated under legislative authority by a state board are unreasonable and oppressive, he should seek relief by applying to that board to modify them." As said in that case, there is no suggestion here, sufficient at any rate, that, if complainant had sought modification of the regulations complained of, its application would not have been fairly considered, or that it would have been denied the relief, to which it is entitled. See, also, Red "C" Oil Manufacturing Company v. Board of Agriculture, 222 U.S. 380, 381, 32 S.Ct. 152, 56 L.Ed. 240.

While it is clear that, if there is power to classify and such classification is reasonable, the court will not undo what the classifying executive department does, we are not bidden to view the door as closed against an application to reopen and re-examine a classification if the citizen feels aggrieved by the same. The citizen should be able to show to the court that, after an executive board has so acted, its acts would not only injure the citizen, but that the citizen has returned to the board and sought to have the act so modified or set aside, as to relieve him of its burdens, before he can ask court relief. In other and simpler words, it is presumed that the public servant will do the right

thing, if shown that what he has done is wrong.

A great many of the questions raised by the complainant have been ruled against it by the courts in construing and passing upon these statutes. Texas Panhandle Gas Company v. Thompson et al. (D.C.) 12 F.Supp. 462; Clymore Production Company et al. v. Thompson et al. (D.C.) 11 F.Supp. 791; F. C. Henderson, Inc., v. Railroad Commission of Texas (D.C.) 56 F.(2d) 218; People's Petroleum Producers, Inc., v. Sterling et al. (D.C.) 60 F.(2d) 1041; Danciger Oil & Ref. Co. of Texas v. Smith et al. (D.C.) 4 F.Supp. 236; Brown v. Humble Oil & Refining Co. (Tex.Sup.) 83 S.W.(2d) 935, 99 A.L.R. 1107.

Other cases that shed some light are Pacific States Box & Basket Co. v. S. T. White, 56 S.Ct. 159, 80 L.Ed. ——; Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369, Ann.Cas. 1912C, 160; State of Ohio v. Deckebach, 274 U.S. 392, 47 S.Ct. 630, 71 L.Ed. 1115; Lawrence v. State Tax Commission, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102, 87 A.L.R. 374; Bandini Petroleum Co. v. Superior Courts, 284 U.S. 8, 52 S.Ct. 103, 76 L.Ed. 136, 78 A.L.R. 826; Ohio Oil Company v. Indiana, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729; Clymore Production Co., et al. v. Thompson et al. (D.C.) 13 F.Supp. 469.

Under the facts as exhibited by the affidavits, which are ex parte, without cross-examination privilege, and without the appearance of the witness for the assistance of the court, the novel location of the complainant is not conceded nor conclusively shown; the impossibility of remedying the holes so that there may be a control over the production without destruction is an open question; the final determination of the regulation making body after it shall have heard the exact facts of the complainant's situation is not shown; nor are the drainage and marketing situations definitely determined. We are not holding that state officers may defeat affirmative relief by simply pleading that the matter still pends before an executive board, but we are holding that, where it clearly appears, as here, that the situation on which the order complained of was made is susceptible of and has undergone changes, the judgment of the administrative board should be sought on these matters before we are asked to enjoin them upon an hypothesis

as to what this ruling would be. In short, courts sit to give equitable relief against real, and not imagined, situations. Gully v. Interstate Natural Gas Co. (C.C.A.) 82 F. (2d) 145.

The bill is therefore dismissed without prejudice.