Loran D. NEHRING, Appellant
(Plaintiff below),

v.

Bruce G. RUSSELL, Appellee
(Defendant below).

No. 4831.

Supreme Court of Wyoming.

July 7, 1978.

Earl R. Johnson, Jr., Casper, signed the brief and appeared in oral argument on behalf of appellant.

Cameron S. Walker, Casper, signed the brief, and William S. Bon and Cameron S. Walker, Schwartz, Bon & McCrary, Casper, appeared in oral argument on behalf of appellee.

Blair J. Trautwein, Cheyenne, Wyoming Trial Lawyers' Ass'n, signed the brief on behalf of amicus curiae.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

By this appeal, plaintiff-appellant challenges the judgment of the district court in a case tried to the court only, finding against plaintiff on the question of liability in his damage action founded on defendant-appellee's alleged negligent driving. As a basis for reversal, plaintiff raises four claims of error in the following order:

1. The trial court erred in finding the Wyoming guest statute, § 31–5–1116, W.S.1977, applicable to the facts of this case;

2. Substantial evidence does not exist to support the finding of the trial court that defendant-appellee was not guilty of gross negligence;

3. The Wyoming guest statute has been superseded by the enactment of comparative negligence legislation;

4. The Wyoming guest statute is unconstitutional under the constitutions of the United States and the State of Wyoming. We will hold the guest statute unconstitutional, reverse on that basis only and remand for a determination of damages.

On Friday, May 25, 1975, plaintiff, defendant and a third party left the residence they shared in Glenrock, Wyoming, and headed for Worland, Wyoming, where they intended to build a block pump house for defendant's sister and brother-in-law during the extended Memorial Day weekend. All three men had family connections in the Basin area. The building of the block house was a strictly gratuitous gesture, done without any charge and carried on as more or less a social get-together. While it is not totally clear from the record whether or not all three men were traveling in defendant's pickup truck, it is clear that at least plaintiff was traveling with him, and that factor is all we need be concerned with here.

By Friday night, plaintiff and defendant had reached their destination. Work on the pump house at defendant's sister's home outside of Worland began on Saturday about midday and continued the following day, Sunday, until late evening when the masonry work plaintiff and defendant had set out to do was completed. Both men then cleaned up and drove back to Worland in defendant's truck, intending to visit the local bars. As it was Sunday evening, the bars were closed, but they did discover that a beer party was being held outside of town. By mutual agreement, they decided to drive to this party, arriving sometime between 11:00 p. m. and 12:00 midnight on Sunday.

At approximately 1:30 a. m., (Monday morning) plaintiff returned to defendant's truck wherein he promptly fell asleep. When defendant returned to the truck,

somewhere between two and three hours later, plaintiff awoke and asked defendant if he wanted plaintiff to drive. Defendant declined the offer, stating that although he was tired, he felt alert, was not sleepy or intoxicated and felt that he could drive back without difficulty to his sister's house where they could spend the night. Plaintiff stayed awake and watched defendant drive without problem for about three or four miles, then laid back down on the seat and went to sleep. Defendant continued driving without difficulty for approximately 20 miles, first over a rugged dirt road, then on paved highway through the town of Worland and onto the paved county road leading to his sister's house. Defendant testified that throughout this period, he had no warning that he was sleepy or drowsy nor that he was likely to become so.

Approximately one and one-half miles from his sister's residence, defendant, without realizing that he may have fallen asleep, suddenly became aware that he had driven his truck into a borrow pit. When an attempt to pull the truck back onto the road threatened to roll it over, he continued through the borrow pit until reaching a drainage ditch, where he abruptly hit a culvert. The truck bounced across the ditch and came to a sudden stop on the other side.

As a result of the occurrence, plaintiff filed a complaint against defendant, seeking damages for injuries sustained, contending negligence in operation of the vehicle. Trial on the issue of liability only was set for February 10, 1977, to be preceded by an informal meeting with the court on that date. In the course of that informal meeting, plaintiff raised the issue of the unconstitutionality of the guest statute, as well as whether or not it had been repealed by the enactment of the comparative negligence statute. Counsel for defendant objected that these issues had not been raised in either a timely or appropriate manner, in response to which the trial court *sua sponte*

ordered plaintiff to raise those statutory issues through amended pleadings and ordered that trial of liability be continued until March 31. Defendant's objection to this continuance and reopening of the pleadings was denied.

The pleadings were amended and the issues on liability proceeded to trial upon the date to which continued. Following trial, the district judge made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

"1. The defendant is not chargeable with gross negligence;

"2. The defendant was guilty of 90% causal negligence;

"3. The plaintiff was guilty of 10% causal negligence;

"4. The plaintiff did not assume the risk of the accident and injuries in question;

"CONCLUSIONS OF LAW

"1. Wyoming Statute § 31–233 is not unconstitutional under Article 1, § 34 of the Wyoming Constitution;

"2. Wyoming Statute § 31–233 is not unconstitutional and violative of the 14th Amendment of the United States Constitution;

"3. That Wyoming Statute § 31–233 was not repealed by the enactment of Wyoming Statute § 1–7.2, Chapter 28, § 1, Session Laws of 1973;

"4. The Court finds generally in favor of the defendant and against the plaintiff, that judgment should be entered herein in favor of the defendant, and that defendant should recover his costs of suit."

Concurrently, the court entered judgment for the defendant. For the trial court to have denied judgment to the plaintiff, it of necessity must have found that at the time of the accident, plaintiff was a "guest" in defendant's vehicle, as anticipated by the Wyoming guest statute, § 31–5–1116, W.S. 1977.[1]

---

1. Section 31–5–1116, W.S.1977, provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or

■ When constitutionality becomes a question, this court will only consider such an attack as a final resort. A court does not pass on constitutionality of a statute unless the necessity therefor in a pending case clearly appears. *Schoeller v. Board of County Commissioners of Park County,* Wyo.1977, 568 P.2d 869; *Knudson v. Hilzer,* Wyo.1976, 551 P.2d 680; *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission,* Wyo.1968, 446 P.2d 550; West's Wyoming Digest, Constitutional Law, ■■■■ It is for that reason, we must patiently dispose of all preliminary questions raised to assure and establish that there is no way to avoid reaching the important constitutional issue.

■ Before proceeding to the question of constitutionality, we must satisfy ourselves that the trial judge was justified in finding the plaintiff a guest. If not a guest, then we would not have an issue of constitutionality involved. Within the meaning of that statute, whether or not an individual is a guest is primarily a question of motivation, the test being "whether the inducing cause of the transportation was the friendship of the parties or whether the motivating factor of the invitation to ride was the expectation of benefit." *Herring v. Coose,* Wyo.1967, 434 P.2d 351, 352. Where the inferences to be drawn from the evidence presented are conflicting, the determination is one which should be left to the trier of fact.

> "If on the whole evidence the facts, the inferences from them, or the evaluation of them, leave the issue in doubt (under the guiding rules adopted in the jurisdiction), the question whether the occupant is a guest will be left to the jury." *Herring v. Coose,* 434 P.2d at 352, quoting with approval, 2 Harper and James, Law of Torts, pp. 960–961 (1956).

The trial judge sits as the finder of fact in lieu of a jury in the case now before us.

While we might be inclined to agree with plaintiff that his original carriage by defendant to the Worland-Basin area was motivated by reasons of benefit, albeit non-pecuniary, and therefore he was a "passenger" as opposed to a guest, *Haley v. Dreesen,* Wyo.1975, 532 P.2d 399, Annot. "Nonmonetary Benefits or Contributions by Rider as affecting his Status Under Automobile Guest Statute," 39 A.L.R.3d 1083 (1977), such finding does not necessarily render erroneous the finding by the trial court that plaintiff was a guest. Even though a plaintiff may during the initial course of a trip be considered a passenger as opposed to a guest, when the accident in controversy occurs during a side trip undertaken for the mutual pleasure and enjoyment of the participants, the "passenger" then becomes a "guest" within the meaning of the statute for the duration of that trip. *Matlock v. Hooge,* Tex.Civ.App.1963, 365 S.W.2d 386, reh. den.; *Robe v. Ager,* 1964, 80 S.D. 597, 129 N.W.2d 47, reh. den. Assuming, as we must, the truth of the evidence presented in favor of appellee and drawing therefrom every fair and reasonable inference available, *Gray v. Fitzhugh,* Wyo.1978, 576 P.2d 88; West's Wyoming Digest, Appeal and Error, ■■■■■■ ■ the record on appeal reflects sufficient substantial evidence to support the trial court's finding in that regard. *Rocky Mountain Packing Co. v. Branney,* Wyo. 1964, 393 P.2d 131.

■ After work on the pump house was completed late Sunday evening, plaintiff and defendant, by mutual agreement, decided to drive to Worland in search of sociable diversions, ultimately ending up at a beer party some distance outside of town. It was during the return from that party, to spend the night at defendant's sister's house, that the occurrence giving rise to this action took place. Under these circumstances, it should be clear that at the time

willful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or willful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

Identical to the Michigan statute, as noted in *Mitchell v. Walters,* 1940, 55 Wyo. 317, 100 P.2d 102. Recently declared unconstitutional by the Michigan Supreme Court in *Manistee Bank & Trust Co. v. McGowan,* 1975, 394 Mich. 655, 232 N.W.2d 636.

of the injury, plaintiff's association with defendant was purely gratuitous and nothing more. Plaintiff has raised the argument that he had no alternative means of transportation to leave the party; therefore, somehow he was not a "guest", but such assertion misses the mark. What is material under the guest statute is the effect of the plaintiff's presence as toward the defendant. There being no benefit conferred on defendant, direct or otherwise, as the motivating factor behind plaintiff's presence on this side trip, he remains a guest and, up to that point, the guest statute applies.

■ Having concluded, under the facts of the situation herein, that plaintiff was a "guest" as anticipated by the statute, we are next confronted by his assertion that the actions of the defendant in driving when he knew he was "very definitely tired" constituted gross negligence; and, therefore, the statute did not apply. According to *Knudson v. Hilzer*, Wyo.1976, 551 P.2d 680, 684:

> "* * * When the defendant raised the defense that the plaintiff was a guest, the burden was shifted to plaintiff of establishing gross negligence or willfull [sic] and wanton misconduct causing plaintiff's injuries. In an action by a guest against the driver, it is incumbent upon the guest to prove gross negligence on the driver's part to support a cause of action. *Fleming v. Lawson*, 10 Cir. 1956, 240 F.2d 119. * * *"

If not guilty of gross negligence, then the guest statute would deprive the plaintiff of recovery even though defendant was guilty of ordinary negligence. Under the guest statute, gross negligence has been defined as "an indifference to present legal duty and utter forgetfulness of legal obligations," *Knudson v. Hilzer*, supra; *Krahn v. LaMeres*, Wyo.1971, 483 P.2d 522; *Altergott v. Story*, Wyo.1964, 388 P.2d 196; *McClure v. Latta*, Wyo.1960, 348 P.2d 1057, determination of which is a question of fact for the jury, or as here, the trial court sitting without a jury, under the facts and circumstances of each individual case.

*Knudson*, supra; *Altergott*, supra; *Krahn*, supra. Although defendant did admit to being tired, he testified that he did not feel sleepy or drowsy but rather alert and confident that he would have no difficulty completing the trip to his sister's house. Such uncontradicted testimony negatives the existence of any warning of drowsiness on the part of the defendant prior to the accident and is sufficient substantial evidence to support the holding of the trial court, *Rocky Mountain Packing Co. v. Branney*, supra, particularly in light of this court's prior decision in *Altergott v. Story*, supra. In that appeal, a directed verdict for the defendant-driver was sustained, the court stating that "[t]he mere fact of falling asleep while driving does not constitute gross negligence within the meaning of the statute." *Altergott v. Story*, 388 P.2d at 198. And there, as here, evidence was presented to the effect that the driver was short of sleep and tired, but not sleepy, and had previously consumed one beer. The finding of the trial court of a lack of gross negligence on the part of defendant or that he was only guilty of momentary inattention, which is not gross negligence but negligence of a lesser degree, was not error. *Mitchell v. Walters*, 1940, 55 Wyo. 317, 100 P.2d 102.

■ Having concluded that the initial two assertions of error raised by plaintiff-appellant are not sound, we face next his third: that the guest statute of Wyoming has been superseded by the enactment of comparative negligence legislation, citing as his sole authority therefor, *Thompson v. Hagan*, 1974, 96 Idaho 19, 523 P.2d 1365. If the comparative negligence statute supersedes and by implication repeals the guest statute, then we would not need to consider the question of constitutionality. Our review of *Thompson*, though, reveals no judicially acceptable authority for such an assertion of implied repeal. In that decision, the Idaho Supreme Court voided the state's guest statute upon constitutional equal-protection grounds, not upon the basis that the statute had been superseded by the enactment of comparative negligence. The sole

support for plaintiff's position comes as dicta in a special concurring opinion entered by Justice McFadden of that court, the position not being adopted by the majority and specifically rejected by the dissent. And as pointed out by Professor Schwartz [2] in his treatise on comparative negligence, no court to date has accepted such an implied repeal argument: [3]

"It could be logically contended that the general purpose of a comparative negligence statute to apportion damages on the basis of fault is seriously hampered by guest statutes which sharply limit the liability of culpable hosts. It might be deduced from this contention that a comparative negligence statute should be read as an implied repealer of the guest statute. However, no court has accepted this argument to date. Since comparative negligence statutes, by their language, are limited to matters directly connected with the defense of contributory negligence, this would be too great a judicial leap." (Footnote omitted.)

██ Repeals by implication are not favored. *Bartlett v. State,* Wyo.1977, 569 P.2d 1235, reh. den.; *Thomas v. State,* Wyo. 1977, 562 P.2d 1287; *Hutchins v. State,* Wyo.1971, 483 P.2d 519; *Longacre v. State,* Wyo.1968, 448 P.2d 832; *Doyle v. Schroeder,* 1956, 76 Wyo. 178, 301 P.2d 379, and while such implicit repeals have at times been found, *Thomas v. State, supra; Longacre v. State, supra,* the party so asserting bears "the burden of demonstrating beyond question that the legislative body by its later action evinced an unequivocal purpose of effecting a repeal." *Doyle v. Schroeder,* 301 P.2d at 381. What must be shown is that the latter statute is so repugnant to the earlier one that the two cannot stand together, or that the whole subject of the earlier statute is covered by the latter one having the same object, clearly intending to prescribe the only rules applicable to the subject. *Bartlett v. State, supra; Thomas*

v. State, supra; Hutchins v. State, supra; Longacre v. State, supra.* In the situation now before us, plaintiff has failed totally to fulfill this burden, and with probable good reason. The doctrine of comparative negligence touches contributory negligence, nothing more, and to find from that limited basis an implied repeal is "too great a judicial leap."

██ We have only one more hurdle to jump. If the defendant was not guilty of some negligence, then there would be no liability in any event and we would be unable to reach the constitutional question. Was there ordinary negligence? The trial judge specifically found that the defendant was 90% negligent and plaintiff 10% negligent. The question is easy to answer. In the first place, the defendant makes no claim in his brief that he was free of negligence but rather places his entire reliance on the applicability and constitutionality of the guest statute. The standard of care is clear. Negligence is the failure to observe for the protection of the interests of another person, that degree of care, precaution and vigilance, which the circumstances demand, whereby such other person suffers injury. *Hildebrand v. Chicago, B. & Q. R. R.,* 1932, 44 Wyo. 488, 13 P.2d 1081, on reh. aff'd, 1933, 45 Wyo. 175, 17 P.2d 651. In the absence of some other explanation relieving the defendant of fault, it can be a lack of concern by the defendant toward the plaintiff that he failed to acknowledge the effects upon the human body of day-long labor and partying until the waning hours of the following morning, without rest, impairing perception, attention and ability to react, consistent with safe driving, thereby exposing his passenger to the risk of injury. It was for the trier of fact to determine whether that was negligence. *Knudson v. Hilzer, supra.* We can find no reason to disagree with the trial judge in his finding of defendant's negligence.

---

**2.** Schwartz, Comparative Negligence, p. 179 (1974), see also 1978 pocket part.

**3.** The Supreme Court of Utah, in a very recent decision in upholding that state's guest statute,

specifically rejected this implied repeal argument. *Critchley v. Vance,* Utah 1978, 575 P.2d 187.

We must now conclude that but for the guest statute the plaintiff would have prevailed on the question of liability. Having stripped out the possibility of trial court error and any alternative basis for reversal under the assertions urged by plaintiff covered to this junction, we turn to what is the crux of his appeal: that under the constitutions of Wyoming and the United States the guest statute is an improper, unconstitutional denial of equal protection. Section 34, Article I, Wyoming Constitution;[4] Fourteenth Amendment, United States Constitution.[5] In response, defendant asserts that this question of constitutionality should not be allowed on appeal inasmuch as the trial judge abused his discretion in instituting a continuance before trial and ordering plaintiff to amend his pleadings, raising unconstitutionality, after plaintiff informed the court of his intention to so raise the question. As defendant himself points out on brief, the granting of a continuance and the allowance of pleading amendments are normally within the trial court's sound discretion. In light of the liberality with which pleading amendments are allowed, *Beaudoin v. Taylor*, Wyo.1972, 492 P.2d 966, as well as the fact that defendant has alleged no prejudice from the amendments (the continuance order was for over forty-five days), it is this court's conclusion that the trial judge did not abuse his discretion. The issue of unconstitutionality was properly raised and is now properly before this court.

A party urging a judicial determination that a statute is unconstitutional assumes a heavy burden, for there is always a strong presumption of constitutionality, *Stephenson v. Mitchell ex rel. Workmen's Compensation Dept.*, Wyo.1977, 569 P.2d 95; *Sanchez v. State*, Wyo.1977, 567 P.2d 270; *Budd v. Bishop*, Wyo.1975, 543 P.2d 368, it being required that the alleged unconstitutionality be clear beyond a reasonable doubt, *Witzenburger v. State ex rel. Wyo-*

*ming Community Development Authority*, Wyo.1978, 575 P.2d 1100; *Sanchez v. State*, supra; *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, Wyo. 1971, 490 P.2d 1069; *People v. Murphy*, Colo.1977, 559 P.2d 708. With these precepts in mind, we address the question of constitutionality.

Both at trial and here on appeal, plaintiff has alleged that because of the distinction drawn between auto guests and guests in other social situations, as well as that drawn between paying and gratuitous auto guests, the Wyoming guest statute is violative of federal guarantees of equal protection as that doctrine is embodied in the Fourteenth Amendment to the United States Constitution. When considering such an assertion, it must be kept in mind that the State of Wyoming is an inseparable part of the federal union, with the Constitution of the United States being supreme law of the land; therefore, interpretations placed on that document and its protection by the United States Supreme Court should be and are dispositive of any federal constitutional questions raised in the courts of this state. *Torres v. Laramie Cty. School District No. 1*, Wyo.1973, 506 P.2d 817, reh. den., cert. den. sub nom., *Johnson v. Laramie Cty. School District No. 1*, 414 U.S. 990, 94 S.Ct. 342, 38 L.Ed.2d 229, reh. den., 414 U.S. 1139, 94 S.Ct. 888, 38 L.Ed.2d 765. We are not without guiding authority in resolving the federal question.

By way of its affirmance of a Wyoming federal district court judgment denying compensation to an automobile guest, the United States Court of Appeals for the Tenth Circuit ruled that under the applicable federal authorities, the Wyoming guest statute is not in violation of the federal equal protection guarantees of the Fourteenth Amendment. *Neu v. Grant*, C.A. 10, 1977, 548 F.2d 281. The Tenth Circuit Court there pointed out that in 1929, in

---

4. Section 34, Article I, Wyoming Constitution, provides that: "All laws of a general nature shall have a uniform operation."

5. Section 1 of the XIVth Amendment to the Constitution of the United States provides in pertinent part: "* * * No State * * * shall * * * deny to any person within its jurisdiction the equal protection of the laws."

upholding the Connecticut guest statute, the United States Supreme Court had found such statutes not to be violative of federal guarantees of equal protection, *Silver v. Silver,* 1929, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221, 65 A.L.R. 939; and that since the decision therein, the Supreme Court had dismissed a more recent Fourteenth Amendment challenge to the guest statute, stating in its dismissal that the appeal did not present a substantial federal question. *Cannon v. Oviatt,* Utah 1974, 520 P.2d 883, dismissed for lack of substantial federal question, 419 U.S. 810, 95 S.Ct. 24, 42 L.Ed.2d 37, reh. den., 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 658. In point of fact, in each of its last three terms, as well as the present one, the United States Supreme Court has been asked to consider whether a state or federal court had correctly determined that a state guest statute did not infringe federal equal protection guarantees; and on each occasion, the Court declined consideration. *Hill v. Garner,* 1977, 277 Or. 641, 561 P.2d 1016, dismissed for lack of substantial federal question, 434 U.S. 989, 98 S.Ct. 623, 54 L.Ed.2d 486; *Sidle v. Majors,* C.A. 7, 1976, 536 F.2d 1156, cert. den., 429 U.S. 945, 97 S.Ct. 366, 50 L.Ed.2d 316; *White v. Hughes,* 1975, 257 Ark. 627, 519 S.W.2d 70, reh. den., dismissed for lack of substantial federal question, 423 U.S. 805, 96 S.Ct. 15, 46 L.Ed.2d 26; *Cannon v. Oviatt,* supra. Of particular significance are those occasions when the appeal was dismissed for lack of a substantial federal question, *Hill v. Garner,* supra; *White v. Hughes,* supra; *Cannon v. Oviatt,* supra, since through such dismissals the Court ruled on the merits of the equal protection issue. In *Hicks v. Miranda,* 1975, 422 U.S. 332, 343–344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, it was explained:

> "[The] case was an appeal from a decision by a state court upholding a state statute against federal constitutional attack. A federal constitutional issue was properly presented, it was within our appellate jurisdiction under 28 U.S.C. § 1257(2), and we had no discretion to refuse adjudication of the case on its merits as would have been true had the case been brought

here under our certiorari jurisdiction. We are not obligated to grant the case plenary consideration, and we did not; but we were required to deal with its merits. We did so by concluding that the appeal should be dismissed because the constitutional challenge * * * was not a substantial one. * * * As Mr. Justice Brennan once observed, '[v]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case . . .,' *Ohio ex rel. Eaton v. Price,* 360 U.S. 246, 247, 79 S.Ct. 978, 979, 3 L.Ed.2d 1200 (1959); cf. R. Stern & E. Gressman, Supreme Court Practice, 197 (4th ed. 1969) ('The Court is, however, deciding a case on the merits, when it dismisses for want of a *substantial* question . . .'); C. Wright, Law of Federal Courts 495 (2d ed. 1970) ('Summary disposition of an appeal, however, either by affirmance or by dismissal for want of a substantial federal question, is a disposition on the merits')."

Even though faced as we are now with this federal authority indicating a guest statute to be constitutional under the equal protection provisions of the Fourteenth Amendment, some state courts of last resort have still been inclined to hold their guest statute violative of that federal provision. The apparent headwaters for those holdings of unconstitutionality is *Brown v. Merlo,* 1973, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505, in which the California Supreme Court, in finding a federal constitutional violation, distinguished *Silver v. Silver,* supra, on the basis of its antiquity and through a very narrow construction of its holding which the California court concluded was unpersuasive. Among the other state courts following the lead of Brown, many have tended to ignore Silver and its progeny created under the Hicks doctrine. See e. g., *Laakonen v. Eighth Judicial District Court,* 1975, 91 Nev. 506, 538 P.2d 574, reh. den.; *Primes v. Tyler,* 1975, 43 Ohio St.2d 195, 331 N.E.2d 723; *Thompson v. Hagan,* supra; *Henry v. Bauder,* 1974, 213 Kan. 751, 518 P.2d 362, reh.

den. In only one decision since *Brown v. Merlo* has an attempt been made to deal with the problem directly, *McGeehan v. Bunch*, 1975, 88 N.M. 308, 540 P.2d 238. In *McGeehan*, the New Mexico Supreme Court, after noting that the New Mexico guest statute had been copied verbatim from the Connecticut statute upheld in *Silver v. Silver*, proceeded to distinguish Silver by pointing out that what the United States Supreme Court had ruled on therein was the distinction between gratuitous passengers in automobiles and those in other classes of vehicles, not the distinction raised herein, i. e., the distinction between paying and nonpaying passengers in automobiles. In *McGeehan*, 540 P.2d at 239, in that connection, it was said:

"The United States Supreme Court considered the constitutionality of the Connecticut guest statute, after which the New Mexico statute was copied verbatim, in *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Although the equal protection clause was involved, the matter then under consideration was different from what we are faced with here. The Court held the statute to be constitutional and stated (280 U.S. at 123, 50 S.Ct. at 59, 74 L.Ed. at 225):

'It is said that the vice in the statute is not that it distinguishes between passengers who pay and those who do not, but between gratuitous passengers in automobiles and those in other classes of vehicles. But it is not so evident that no grounds exist for the distinction that we can say *a priori* that the classification is one forbidden as without basis, and arbitrary. See *State of Ohio ex rel. Clarke v. Deckebach*, 274 U.S. 392, 397, 47 S.Ct. 630, 71 L.Ed. 1115.'

Prior to the foregoing quotation, the court had said:

"This appeal is limited to the determination of one narrow issue, whether or not our guest statute by creating a distinction between paying and nonpaying automobile guests violates the equal protection clause of the federal and state constitutions."

While we agree that the *Silver* decision did not specifically address the distinction between paying/nonpaying automobile passengers, in at least three court decisions since Silver in which the United States Supreme Court has ruled on the merits by declining full review, *Hicks v. Miranda*, supra, this specific distinction has been raised. *Sidle v. Majors*, supra; *White v. Hughes*, supra; *Cannon v. Oviatt*, supra. The paying/nonpaying passenger distinction has therefore been dealt with and approved by the United States Supreme Court, albeit only in a somewhat indirect manner. Yet, based on those federal authorities, they being the strongest indication of federal constitutional intent, we must hold that the Wyoming guest statute does not violate the equal protection guarantees of the Fourteenth Amendment, United States Constitution. We prefer not to ignore the most eminent authority available on federal constitutional questions, and there is no reason why we should.

Finally, we are confronted with plaintiff's last challenge, the constitutionality of the Wyoming guest statute under the guarantee of § 34, Article I, Wyoming Constitution. While because of applicable federal authorities we are precluded from any finding except constitutionality for the guest statute under the Fourteenth Amendment to the United States Constitution, such a conclusion is by no means restrictive of what we may find under our own constitutional mandate, even though both provisions may have the same overall end in view. *Pirie v. Kamps*, 1951, 68 Wyo. 83, 229 P.2d 927, 26 A.L.R.2d 647. The question has been raised most predominantly in criminal appeals, yet the same basic reasoning is equally relevant here. As pointed out in *Richmond v. State*, Wyo.1976, 554 P.2d 1217, 1223:

"The State of Wyoming accords the same protection to its citizens and those within its jurisdiction and there is no reason why we should not apply Wyoming constitutional provisions in the administration of our jurisprudence, as long

as they do not infringe upon the constitutional standards of the United States Constitution * * *. This court has never been blind to the fact that 'protection of constitutional rights of an accused is not the peculiar province of the federal courts.' *Dryden v. State*, Wyo.1975, 535 P.2d 483, 491. Nor are we blind to the rule that constitutional standards announced by the Supreme Court of the United States are minimal, which rights may be enlarged under State constitutional provisions if justifiable."

Therefore, any holding we make in this case will be under the Constitution of the State of Wyoming, and not the Constitution of the United States. We see our constitution speaking in terms of "uniform operation" whereas the Constitution of the United States uses the words "equal protection." The Wyoming phraseology is more adaptable to the slant we shall take, in accord with a growing, though not unanimous,[6] disapproval of guest statutes on constitutional grounds amongst the state courts of the nation.

 This court has not had before it any case in a posture where the constitutionality of the guest statute could be or has been tested. We are ploughing virgin ground, though this court has had occasion to make pertinent observations with respect to the function of § 34, Article I, Wyoming Constitution. The legislature by the guest statute has classified passengers in automobiles as paying and nonpaying, and applied different standards of care. A classification cannot be made without a reason therefor. *May v. City of Laramie*, 1942, 58 Wyo. 240, 131 P.2d 300. While there is no prohibition against a reasonable classification of persons and things for the purpose of legislation, the classification must be reasonable in its discrimination in the light of the objects sought to be accomplished and must not be arbitrary; any claim that the restriction of the law bears a reasonable relation to a public interest must rest not on conjecture but must be supported by something of substance, *Nation v. Giant Drug Company*, Wyo.1964, 396 P.2d 431. See also, *Heather v. Delta Drilling Co.*, Wyo.1975, 533 P.2d 1211, reh. den. The core of the question then is whether the classification proscribed by the statute has a rational basis.

Traditionally, the two most frequently articulated legislative justifications for the passage of guest statutes are that such enactments (1) promote hospitality on the part of drivers by protecting from suit for ordinary negligence those who gratuitously provide rides, and (2) prevent the possible collusion which might result from a confession of liability by an insured driver to allow recovery of damages by a family member or close friend. W. Prosser, Torts, § 34 p. 187 (4th ed. 1971); 2 Harper and James, Law of Torts, § 16.15 p. 961 (1956); *Brown v. Merlo*, supra; *Thompson v. Hagan*, supra; *Henry v. Bauder*, supra; *Laakonen v. Eighth Judicial District Court*, supra. Of these two justifications, only hospitality has been discussed in Wyoming in *Hinton v. Wilmes*, 1959, 80 Wyo. 360, 343 P.2d 201, 203:

"When guest statutes were passed in various states some 30 or more years ago, automobiles were not as numerous as they are today. Many people at that time who did not own such a vehicle were glad when they received an invitation to ride in an automobile for their pleasure. At that time also, as is partially true

**6.** Since *Brown v. Merlo*, supra, the following courts have sustained the guest statutes of their respective states: *Dempsey v. Leonherdt*, 1976, 264 Ind. 206, 341 N.E.2d 763; *Brady v. Acs*, 1976, 264 Ind. 285, 342 N.E.2d 837, reh. den., dismissed for lack of substantial federal question, 429 U.S. 803, 97 S.Ct. 35, 50 L.Ed.2d 64; *Beasley v. Bozeman*, 1975, 294 Ala. 288, 315 So.2d 570; *Behrns v. Burke*, S.D.1975, 229 N.W.2d 86; *Botsch v. Reisdorff*, 1975, 193 Neb. 165, 226 N.W.2d 121; *Keasling v. Thompson*, Iowa 1974, 217 N.W.2d 687; *Richardson v.* *Hansen*, 1974, 186 Colo. 346, 527 P.2d 536; *Justice v. Gatchell*, Del.1974, 325 A.2d 97; *Cannon v. Oviatt*, Utah 1974, 520 P.2d 883, appeal dism'd 419 U.S. 810, 95 S.Ct. 24, 42 L.Ed.2d 37, reh. den. 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 658; *Duerst v. Limbocker*, 1974, 269 Or. 252, 525 P.2d 99; *Tisko v. Harrison*, Tex. Civ.App.1973, 500 S.W.2d 565, reh. den. We do not find them convincing, as applied to the terms of the Wyoming Constitution, which we must construe.

today, there were many stragglers footing their way from place to place known as hitchhikers, and generous automobile drivers frequently picked them up and drove them to their destinations or at least a part of the way. When the legislatures enacted the guest statutes, they undoubtedly had in mind, primarily, situations such as above mentioned—situations involving purely social relations or purely relations of hospitality."

We shall therefore at the moment concentrate our discussion on that particular justification, dealing later with the prevention of collusion theory somewhat briefly.

 Assuming as we must that the promotion of hospitality by generous drivers, and conversely the prevention of lawsuits by ungrateful gratuitous passengers, are legitimate legislative objectives, we cannot agree that the distinctions drawn by the guest statute in this current age rationally support such legislative ends. Prior to 1973, guest statutes generally withstood constitutional assault, but in that year the wall cracked. The California Supreme Court, in finding the California guest statute void as a violation of equal protection under both the California and federal constitutions, ruled that neither the justification of hospitality nor that of prevention of collusion were rationally related to the distinction drawn by the statute. *Brown v. Merlo*, supra.[7]

Although since the *Brown* decision, other state courts have followed the lead of California and invalidated their guest statutes, in the process finding that hospitality and the distinction drawn were not rationally related,[8] the Supreme Court of New Mexico may well have best expressed the basic flaw in the relationship:

"We do not believe that the protection of hospitality justifies the statute's classification. * * * There is no principle in our general legal scheme which dictates that one must pay for the right of protection from negligently inflicted injury. See *Brown v. Merlo*, supra; *Henry v. Bauder*, supra. *The classification fails not because it draws some distinction between paying and nonpaying guests, but because it penalizes nonpaying guests by depriving them completely of protection from ordinary negligence.* The loss of life or limb of a guest should not become less worthy of compensation merely because he has not paid for his ride. No matter how laudable the State's interest in promoting hospitality, it is irrational to reward generosity by allowing the host to abandon ordinary care and by denying to nonpaying guests the common law remedy for negligently inflicted injury. We are unable to discern how the denial of recovery to guests will serve the cause of hospitality." (Emphasis added.) *McGeehan v. Bunch*, 540 P.2d at 241.

We as well fail to see how total denial of recovery through the distinction the statute draws can rationally be found to promote the legislative ends of hospitality and gratuity. Even if at the time of passage of a majority of the existing guest statutes a lack of automobile liability insurance allowed a rational basis to be found, such justification has been eroded away by time and changing circumstances.

"* * * [I]f the characterization of an injured guest's lawsuit as an act of 'ingratitude' ever had general validity, its rationality has been completely eroded by the development of almost universal

---

7. Such a holding is of particular precedential authority in Wyoming since the "equal protection" provisions of the Wyoming and California constitutions are identical. Section 11, Article I, California Constitution; Section 34, Article I, Wyoming Constitution: "All laws of a general nature shall have a uniform operation."

8. *Laakonen v. Eighth Judicial District Court*, supra; *Primes v. Tyler*, supra; *Thompson v. Hagan*, supra; *Henry v. Bauder*, supra; *Manistee Bank & Trust Co. v. McGowan*, 1975, 394 Mich. 655, 232 N.W.2d 636; *Johnson v. Hassett*, N.D.1974, 217 N.W.2d 771, reh. den.

For a comprehensive, objective and up-to-date treatment of guest statutes as related to constitutional considerations see Annot., 66 A.L.R.3d 532 (1975) with pocket part, entitled "Constitutionality of Automobile and Aviation Guest Statutes." See also, Case Note, "Do Classifications Resultant from Automobile Guest Statutes Violate Constitutional Guarantees of Equal Protection?" IX Land and Water Law Review 251, by W. Douglas Hickey.

automobile liability insurance coverage in recent years. Whereas in the late 1920's and 1930's the statute's operation might realistically have been viewed as relieving most generous hosts from potentially great personal expense, today, with the widespread prevalence of insurance coverage, it is the insurance company, and not the generous host, that in the majority of instances wins protection under the guest statute. Thus, in a day in which nearly * * * [all] automobile drivers carry liability insurance, the statute can no longer sequester the defense that it is a necessary means to thwart 'ungrateful' guests. In plain language, there is simply no notion of 'ingratitude' in suing your host's *insurer*." (Footnotes omitted, bracketed material supplied.) *Brown v. Merlo*, 106 Cal.Rptr. at 397, 506 P.2d at 221.

See also *McGeehan v. Bunch*, supra. Thus, in light of this advent of widespread liability insurance, along with the blatant irrationality of denying an injured "guest" recovery for injuries sustained because of ordinary negligence, the lack of a rational relation between the hospitality-gratuity justifications and the distinction drawn by the statute becomes abundantly clear. As noted by Dean Prosser, "If this is good social policy, it at least appears under a novel front." Prosser, supra at 187.[9] From this discussion alone, based on what we believe the constitution of Wyoming guarantees, the Wyoming guest statute is in obvious violation of uniform operation.

█ Finally, although not mentioned in Wyoming jurisprudence as a justification for the guest statute, a few words should be said concerning the prevention of collusion argument. To prevent, or at least cut down on the possibility of collusive lawsuits against insurance companies, the guest statute draws a distinction between paying and nonpaying passengers, the alleged rationale

being that usually nonpaying passengers are guests with whom the driver is normally well acquainted; and because of this presumed acquaintanceship, the driver will be tempted to admit liability so that recovery can be had against his insurance company. *Brown v. Merlo*, supra; *McGeehan v. Bunch*, supra. Yet in furthering this obvious legitimate state interest in the prevention of collusion, the statute eliminates *all* negligence causes of action for nonpaying passengers, a technique reminiscent of employing a cannon to kill a flea. Not only is such a method grossly over-inclusive, doing away with negligence actions for an entire class of persons solely because some portion thereof may be "tainted by the mischief," it is impractical as well. If the mischievous parties would be tempted to commit perjury or aid and abet a false claim on the issue of liability to allow recovery, wouldn't they be just as tempted to lie about the payment of compensation for the ride and avoid the statute in that way? *McGeehan v. Bunch*, supra. Our judicial system is not helpless in this area, as it is well armed with numerous implements for prevention and detection of fraud including the penalties for perjury as well as the tools of cross-examination and various discovery devices. As stated in *Emery v. Emery*, 1955, 45 Cal.2d 421, 431, 289 P.2d 218, 225:

"Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases."

By barring all suits by guest passengers for ordinary negligence, the guest statute exceeds all bounds of rationality and in so doing constitutes a denial of uniform operation under the Wyoming Constitution.

█ By way of summary, we conclude that the distinctions drawn by the Wyoming guest statute between those denied and those permitted recovery for injuries inflicted by ordinary negligence do not

---

**9.** Prosser takes the position that guest statutes are the product of lobbying on the part of insurance companies. He illustrates his expression as follows:

"The typical guest act case is that of the driver who offers his friend a lift to the office or invites him out to dinner, negligently drives him into a collision, and fractures his skull—after which the driver and his insurance company take refuge in the statute, step out of the picture, and leave the guest to bear his own loss. If this is good social policy, it at least appears under a novel front." (Footnote omitted.)

bear a substantial nor rational relation to the statute's ascribed purposes of promoting hospitality, protecting against ingratitude, and preventing collusive lawsuits. We therefore hold that the Wyoming guest statute violates the guarantee of a uniform operation of laws established by § 34, Article I, Wyoming Constitution. Further, cognizant that the determination is ours to make, we conclude that in consideration of all the factors and any prior reliances involved, our holding should be applied prospectively only, i. e., to this action and all causes of action accruing after 30 days following the date of this decision. *Oroz v. Board of County Commissioners of the County of Carbon,* Wyo.1978, 575 P.2d 1155; *Ostwald v. State,* Wyo.1975, 538 P.2d 1298.

Reversed and remanded for a determination of damages, the trial judge having already determined the defendant guilty of 90% of the ordinary negligence causing the occurrence.[10]

---

10. The trial judge may have anticipated the possibility of the result in this case, in making that determination. It would be judicial ineffi-

ciency and waste to require a completely new trial on not only damages but liability as well.