Jodi L. BIERKAMP, Appellee,

v.

Ricky Gene ROGERS, Appellant.

No. 63797.

Supreme Court of Iowa.

June 18, 1980.

As Amended June 27, 1980.

Tom Riley and Iris E. Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellant.

David P. McManus of Olinger, Sosalla & McManus, Cedar Rapids, for appellee.

REES, Justice.

The sole issue presented by this appeal is whether the Iowa guest statute, section 321.494, The Code,[1] is violative of Article I, section 6, of the Iowa Constitution. We conclude that the statute is constitutionally offensive and affirm the ruling of the trial court.

On April 10, 1979, plaintiff Jodi Bierkamp filed a petition in three divisions alleging that she was a passenger in an auto driven by defendant Ricky Gene Rogers when the car crashed into a ditch, injuring the plaintiff. In her first division she alleged that her injuries were the result of Rogers' negligence in the operation of his vehicle and that the aforementioned statute is unconstitutional. The other divisions, not at issue here, alleged liability framed in terms consistent with the exceptions to application of the statute.

Rogers moved to dismiss the first division of plaintiff's petition, contending that section 321.494 bars recovery by a guest passenger in an action predicated on negligence and that the constitutionality of the statute had been conclusively determined in *Keasling v. Thompson*, 217 N.W.2d 687 (Iowa 1974). Bierkamp resisted this motion on the ground that the statute was unconstitutional. Following a hearing, the trial

---

1. "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of an alcoholic beverage, a narcotic, hypnotic or other drug, or any combination of such substances, or because of the reckless operation by him of such motor vehicle."

court overruled the defendant's motion in a ruling which stated no specific grounds. Rogers then sought permission to bring an interlocutory appeal, which was granted on August 9, 1979.

As a preliminary matter we note that while the trial court did not specifically state its reason for denying the plaintiff's motion, the record discloses that the only argument made against application of the guest statute was constitutional in nature. No attempt to show that the plaintiff was not a guest within the meaning of the statute is apparent on the face of the record. We conclude that the ruling of the trial court was based only on the contentions before it and that the constitutionality of the guest statute is squarely presented by the record.

I. Before reaching the merits of this appeal we once again wish to explain why our review is limited to the Iowa constitutional ground. As we noted in *Beitz v. Horak*, 271 N.W.2d 755, 758–59 (Iowa 1978), in 1929 the United States Supreme Court held that Connecticut's guest statute did not violate the equal protection clause of the Fourteenth Amendment. *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929).

In *Silver* the Court found a rational distinction between gratuitous passengers in automobiles and those in other means of conveyance. *Id.*, 280 U.S. at 123, 50 S.Ct. at 59, 74 L.Ed. at 225. Several courts, in evaluating the federal constitutional claim, have sought to distinguish *Silver* by considering a different classification, that separating paying and nonpaying automobile guests. *E. g., Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975); *Ramey v. Ramey*, S.C., 258 S.E.2d 883 (1979).

■ In a series of recent appeals from state court decisions upholding the guest statute the Supreme Court has chosen to dismiss for want of a substantial federal question. *Hill v. Garner*, 434 U.S. 989, 98 S.Ct. 623, 54 L.Ed.2d 486, *dismissing appeal from* 277 Or. 641, 561 P.2d 1016 (1977);

*White v. Hughes*, 423 U.S. 805, 96 S.Ct. 15, 46 L.Ed.2d 26, *dismissing appeal from* 257 Ark. 627, 519 S.W.2d 70 (1975); *Cannon v. Oviatt*, 419 U.S. 810, 95 S.Ct. 24, 42 L.Ed.2d 37, *dismissing appeal from* 520 P.2d 883 (Utah 1974). As we acknowledged in *Beitz*, 271 N.W.2d at 758, these dismissals constitute adjudications on the merits and are binding on both state and federal courts. *See Hicks v. Miranda*, 422 U.S. 332, 343–45, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 235–36 (1975). While the *Silver* opinion did not pass on the paying-nonpaying passenger distinction, that classification was raised in the aforementioned appeals which were dismissed for want of a substantial federal question. Thus these cursory dismissals effectively foreclose our evaluation of any of the distinctions or classifications challenged in those cases on federal constitutional grounds. *See Sidle v. Majors*, 536 F.2d 1156 (7th Cir.), *cert. denied* 429 U.S. 945, 97 S.Ct. 366, 50 L.Ed.2d 316 (1976). Section 321.494 does not violate the equal protection clause of the Fourteenth Amendment. *Beitz v. Horak*, 271 N.W.2d at 759; *Keasling v. Thompson*, 217 N.W.2d 687, 692 (Iowa 1974).

■ II. The result reached by the United States Supreme Court in construing the federal constitution is persuasive, but not binding upon this court in construing analogous provisions in our state constitution. *See Chicago Title Insurance Co. v. Huff*, 256 N.W.2d 17, 23 (Iowa 1977); *Davenport Water Co. v. Iowa State Commerce Commission*, 190 N.W.2d 583, 593 (Iowa 1971). We acknowledged the possibility of varying interpretations or conclusions in *Beitz v. Horak*, 271 N.W.2d at 759, while discussing the guest statute. The constitutionality of the guest statute under the Iowa constitution was not before us at that time. The issue is properly raised in the case at bar.

■ As neither a suspect classification nor a fundamental right is involved, a traditional equal protection analysis is appropriate. *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550 (Iowa 1980); *Hawkins v. Preisser*, 264 N.W.2d 726, 729 (Iowa 1978). The plaintiff has the heavy

burden of showing the statute unconstitutional and must negate every reasonable basis upon which the classification may be sustained. *MRM, Inc. v. City of Davenport,* 290 N.W.2d 338, 342 (Iowa 1980); *Chicago Title Insurance Co. v. Huff,* 256 N.W.2d at 25. This standard has been articulated by the United States Supreme Court in *McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222, 228 (1964): "Judicial inquiry under the Equal Protection Clause, therefore, does not end with a showing of equal application among the members of a class defined by the legislation. The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose . . .."

The source of this standard in the Iowa Constitution is Article I, section 6, which provides: "All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens". We have long found a standard similar to that of *McLaughlin* to flow from Article I, section 6. *See, e. g., MRM, Inc. v. City of Davenport; Redmond v. Carter,* 247 N.W.2d 268, 271 (Iowa 1976); *Knudson v. Linstrum,* 233 Iowa 709, 716, 8 N.W.2d 495, 499 (1943) (A legal classification must be reasonable and based on some substantial distinction); *Keefner v. Porter,* 228 Iowa 844, 848, 293 N.W. 501, 503 (1940) (There must be a reasonable relationship between the purpose of the legislation and the basis of the classification set out in the act); *Hubbell v. Higgins,* 148 Iowa 36, 39, 126 N.W. 914, 916 (1910). In light of this standard we evaluate the classifications made in section 321.-494.

Our review of the trial court's ruling is de novo as it involves the resolution of a constitutional issue. *State v. Matlock,* 289 N.W.2d 625, 627 (Iowa 1980). The burden of proof remains on the party challenging the constitutionality of the statute.

Two separate distinctions drawn by the statute are challenged by Bierkamp. She challenges the rational basis of distinguishing between paying and nonpaying guests in automobiles as well as that of establishing a different standard of care for guests in the automobile context as opposed to other guests. In response the defendant relies on the decision of this court in *Keasling v. Thompson,* 217 N.W.2d 687, 692 (1974), in which we placed great reliance on *Silver v. Silver* and the apparently pervasive existence of guest statutes in other states in finding section 321.494 constitutional on both federal and state grounds. We are being asked to reconsider our five-four decision in *Keasling* insofar as that holding rests on Iowa constitutional grounds.

There has been a recent trend among state courts considering the validity of their guest statutes under an equal protection analysis to find the statutes without a rational basis, concluding that whatever rational basis they once possessed no longer exists. *See Brown v. Merlo,* 8 Cal.3d 355, 506 P.2d 212, 106 Cal.Rptr. 388 (1973); *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974); *Manistee Bank & Trust Co. v. McGowan,* 394 Mich. 655, 232 N.W.2d 636 (1975); *Laakonen v. Eighth Judicial District Court,* 91 Nev. 506, 538 P.2d 574 (1975); *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975); *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974); *Primes v. Tyler,* 43 Ohio St.2d 195, 331 N.E.2d 723 (1975); *Ramey v. Ramey,* S.C., 258 S.E.2d 883 (1979); *Nehring v. Russell,* 582 P.2d 67 (Wyo.1978). At the same time several states have sustained the constitutionality of their guest statutes in the face of equal protection challenges. *Beasley v. Bozeman,* 294 Ala. 288, 315 So.2d 570 (1975); *Davis v. Cox,* Ark., 593 S.W.2d 180 (1980); *Richardson v. Hansen,* 186 Colo. 346, 527 P.2d 536 (1974); *Justice v. Gatchell,* 325 A.2d 97 (Del. 1974); *Dempsey v. Leonherdt,* 264 Ind. 206, 341 N.E.2d 763 (1976); *Botsch v. Reisdorff,* 193 Neb. 165, 226 N.W.2d 121 (1975); *Duerst v. Limbocker,* 269 Or. 252, 525 P.2d 99 (1974); *Tisko v. Harrison,* 500 S.W.2d 565 (Tex.Civ.App.1973); *Cannon v. Oviatt,*

Several of these decisions involved only federal grounds, of which *Silver* was found to be dispositive. *Justice v. Gatchell; Duerst v. Limbocker; Cannon v. Oviatt.*

█ It is our constitutional obligation to determine whether the classifications drawn in section 321.494 are violative of Article I, section 6, of our Constitution. In so doing we accord considerable deference to the judgment of the legislature. Yet this deference is not, in and of itself, necessarily dispositive and changes in underlying circumstances may vitiate any rational basis. *See Gleason v. City of Davenport*, 275 N.W.2d 431, 435 (Iowa 1979) (holding separate limitation on claims against special charter cities violative of equal protection clauses). Additionally, the passage of time may call for a less deferential standard of review as the experimental or trial nature of legislation is less evident. *See Manistee Bank & Trust Co.*, 394 Mich. at 672, 232 N.W.2d at 642–43. Classifications do not deny equal protection simply because they result in some inequality, *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563, 571 (1955); *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (1974), but because the lines drawn do not rationally advance a legitimate government purpose.

In *Keasling* we placed considerable reliance on the decisions of the United States Supreme Court in *Silver v. Silver* and the Michigan Supreme Court in *Naudzius v. Lahr*, 253 Mich. 216, 234 N.W. 581 (1931). We also acknowledged in a prior case, *Hessler v. Ford*, 255 Iowa 1055, 1059, 125 N.W.2d 132, 134 (1963), that "the so called Guest Statute does appear in nearly all State Codes today". We apparently found the pervasive existence of the statute to support its rationality.

Due to the aforementioned recent rulings of the United States Supreme Court dismissing guest statute appeals for want of a substantial federal question, *Silver v. Silver* remains dispositive of federal constitutional grounds. *Beitz v. Horak*, 271 N.W.2d at 758–59. Federal adherence to the *Silver* holding has not been without question. *See Sidle v. Majors*, 536 F.2d 1156 (7th Cir.),

*cert. denied* 429 U.S. 945, 97 S.Ct. 366, 50 L.Ed.2d 316 (1976). *Silver* is not dispositive of the Iowa constitutional issue as we noted in *Beitz*. 271 N.W.2d at 759.

The portion of *Naudzius* cited in *Keasling* involved both of the rationales often presented in support of the guest statute: the encouragement of hospitality and the prevention or avoidance of collusive law suits. *Naudzius* was subsequently overruled by the Michigan Supreme Court in *Manistee*, in which the following conclusions were drawn, 394 Mich. at 676, 232 N.W.2d at 644–45:

> In point of fact, the presence or absence of a guest statute does not affect the decision of friends and relatives to ride together in an automobile. Drivers may hesitate to pick up hitchhikers, but not because of potential liability for negligence, ordinary or gross. Friends and relatives offer, seek, accept, or decline rides with each other for reasons quite apart from the ability to recover for negligently inflicted injury, death or loss. It is only after the fortuitous event of an accident that the existence of the statute becomes known to most people. The absence of a guest passenger statute would not chill hospitality or group transportation any more or less than its existence promotes such activity.

Given this definite change in Michigan law, the precedential value of *Naudzius* is most questionable, if not nil.

To the extent that the continued validity of guest statutes in other states is indicative of the existence of a rational basis for the classifications drawn therein, that evidence is dwindling. As acknowledged in *Keasling*, 217 N.W.2d at 690, guest statutes were enacted in slightly over half the states during the 1920's and 1930's. *See* F. Harper & F. James, *The Law of Torts*, § 16.15 at 951 (1956); W. Prosser, *The Law of Torts*, § 34 at 186 (4th ed. 1971). No guest statutes were enacted after 1939. Connecticut which, like Iowa, enacted its guest statute in 1927 was the first to repeal its statute in 1937. *See* Conn.Gen.Stat. § 540E (Supp.1939). Since the California decision

of *Brown v. Merlo,* in 1973, nine other state courts have declared their guest statutes unconstitutional on equal protection grounds. At least five other states have repealed their statutes. *See* Conn.Gen.Stat. § 1628 (repealed by 1937 Conn.Pub.Acts, ch. 270, § 35(*d*)); Fla.Stat. § 320.59 (repealed by 1972 Fla.Laws, ch. 72–1, § 1); Mont.Rev. Codes Ann. §§ 32–1113 through 32–1115 (repealed by 1975 Mont.Laws, ch. 236, § 1); S.D. Codified Laws Ann. §§ 32–34–1 and 32–34–2 (repealed by 1978 S.D.Sess.Laws, ch. 240, §§ 1 and 2); Wash.Rev.Code §§ 46.08.080, 46.08.085 and 46.08.086 (repealed by 1974 Wash.Laws, 1st Ex.Sess., ch. 3, p. 2). Guest statutes are now far less pervasive than *Hessler* would have us believe. Importantly, for our purposes, the courts have played a major role in the process. Additionally, the fact that guest statutes have seen no expansion since 1939 is supportive of the conclusion that changed circumstances have mitigated, if not eliminated, the factors which supported or justified enactment of the statutes.

■ It is with these developments, many subsequent to our *Keasling* decision, in mind that we now address the merits of this appeal. We must determine whether the classifications established by the legislature, distinguishing guests in automobiles from guests in other conveyances and guests in general, bear a fair and substantial relationship to the purposes of the legislation, the fostering of hospitality among automobile drivers and the prevention of collusive law suits.[2] We conclude that there exists no rational relationship between the classifications drawn in the statute and its conceivable purposes and that the statute is violative of Article I, section 6, of the Iowa Constitution. We therefore affirm the ruling of the trial court.

III. The first rationale usually advanced in favor of guest statutes is that such enactments promote hospitality by immunizing one who gratuitously provides a ride from law suits based on ordinary negligence. Among those jurisdictions which have invalidated their guest statutes, the best response to this justification is perhaps that of the New Mexico Supreme Court in *McGeehan v. Bunch,* 88 N.M. at 311, 540 P.2d at 241:

We do not believe that the protection of hospitality justifies the statute's classification. This "hospitality" rationale asserts that the classification scheme merely provides a higher standard of care for those who pay than for those who do not. This principle has been recognized by the courts in the case of common carriers. But this same reasoning cannot reasonably be applied to guests in passenger cars. There is no principle in our general legal scheme which dictates that one must pay for the right of protection from negligently inflicted injury. *See Brown v. Merlo,* supra; *Henry v. Bauder,* supra. The classification fails not because it draws some distinction between paying and nonpaying guests, but because it penalizes nonpaying guests by depriving them completely of protection from ordinary negligence. The loss of life or limb of a guest should not become less worthy of compensation merely because he has not paid for his ride. No matter how laudable the State's interest in promoting hospitality, it is irrational to reward generosity by allowing the host to abandon ordinary care and by denying to nonpaying guests the common law remedy for negligently inflicted injury. We are unable to discern how the denial of recovery to guests will serve the cause of hospitality.

As noted by the dissent in *Keasling,* 217 N.W.2d at 701, this objection is not new or novel. *See, e. g.,* Comment, 14 Iowa L.Rev. 243 (1929). Prosser has capsulized the hospitality justification: "Essentially, however,

2. The legislative history of section 321.494 does not disclose the purposes sought to be accomplished. We have attributed these purposes to the legislature, as these have been the bases for affirming the constitutionality of guest statutes. *See Keasling v. Thompson,* 217 N.W.2d at 693 (LeGrand, J., concurring specially).

the theory of the acts is that one who receives a gratuitous favor in the form of a free ride has no right to demand that his host shall exercise ordinary care not to injure him." W. Prosser, *supra* at 187. Supposedly in hope of rewarding or propagating hospitality, the legislature has singled out the automobile guest for treatment different from guests in other conveyances or in other locations. *See, e. g., Mundy v. Warren*, 268 N.W.2d 213, 218 (Iowa 1978) (duty of reasonable conduct owed to invitee).

Aside from the practical limitation on the effectiveness of guest statutes in affecting conduct noted by the Michigan court in *Manistee*, we fail to see how the classification rationally furthers hospitality for, as noted by the dissent in *Keasling*, 217 N.W.2d at 703, knowledge and consideration of the statute is more likely to be disruptive of hospitality and the sharing of transportation. While there may be more offerors, there would concomitantly be fewer acceptors.

Additionally, we fail to discern a rational basis for distinguishing a guest injured by a driver's negligence from a guest in any other context. Not only is the concept that a nonpaying guest is not entitled to reasonable treatment by others foreign to our general scheme of tort law, but results in a statute which is "invidious", *Henry v. Bauder*, 213 Kan. at 760, 518 P.2d at 369, and "arbitrary insofar as it singles out motor vehicle guests for loss of their common law rights of action". *Keasling*, 217 N.W.2d at 703 (McCormick, J., dissenting).

Several jurisdictions have attempted to distinguish one of the rationales applied by the California Supreme Court in *Brown v. Merlo*, 8 Cal.3d at 864–66, 106 Cal.Rptr. at 394–96, 506 P.2d at 220, that a guest need not pay for reasonable treatment, by noting that in contrast to California law, the status of an individual determines the duty owed to that person under their law. *See, e. g., Davis v. Cox*, Ark., 593 S.W.2d at 183; *Botsch v. Reisdorff*, 193 Neb. at 170–71, 226

N.W.2d at 126; *Tisko v. Harrison*, 500 S.W.2d at 569; *Cannon v. Oviatt*, 520 P.2d at 886. We do not find this distinction persuasive as it is based on lines drawn within a statute. In virtually every setting a social guest is to be accorded reasonable treatment by a host under Iowa law. *Mundy v. Warren; see Keasling*, 217 N.W.2d at 702 (McCormick, J., dissenting). We perceive nothing in the guest-host relationship in the automobile context which would mandate a different conclusion under the common law. *See Stanbery v. Johnson*, 218 Iowa 160, 164, 254 N.W. 303, 305 (1934); *cf.* F. Harper & F. James, *supra* at 950 ("[T]he common law rule today in the absence of statute is that the owner of an automobile owes a guest the duty of ordinary care so far as the operation of the car is concerned."). Far from providing a basis for distinguishing *Brown v. Merlo* and other cases finding guest statutes unconstitutional, the common law is consistent with the result reached in those cases.

Outside the legal context of the guest statute, where contrary precedent is lacking, courts have been less hesitant to invalidate statutes which apply different standards of care to different modes of transportation on equal protection grounds. *See Wessinger v. Southern Railway Co.*, 470 F.Supp. 930 (D.S.C.1979); *Georgia Southern and Florida Railway Co. v. Seven-Up Bottling Co.*, 175 So.2d 39 (Fla.1975); *Marley v. Kirby*, 271 S.C. 122, 245 S.E.2d 604 (1978). In *Georgia Southern* the Florida Supreme Court struck down an 1878 statute which applied a comparative negligence standard in damage actions against railroads to the exclusion of other modes of transportation, although admitting the possible validity of the statute at the time of its enactment. 175 So.2d at 42. In *Marley v. Kirby*, 271 S.C. at 125, 245 S.E.2d at 606, the South Carolina Supreme Court found a statute which abrogated contributory negligence as a bar to recovery in motor vehicle accident actions violated equal protection: "There is no rational basis for separating injuries from motor vehicle accidents from injuries

from other torts." While not adopting the specific results in these decisions, we find their general analysis supportive. Likewise, whatever distinction may have attached to the automobile at the time of the *Silver v. Silver* decision, in which the Supreme Court found the differentiation between guests in autos and guests in other classes of vehicles reasonable because "the use of the automobile as an instrument of transportation is peculiarly the subject of state regulation", 280 U.S. at 122–23, 50 S.Ct. at 58, 74 L.Ed. at 225, has since dissipated.

We hold that the "hospitality" theory does not provide a rational basis for the classifications inherent in the guest statute. However laudable and legitimate may be the state purpose of fostering hospitality, the distinctions drawn in the guest statute do not reasonably or substantially further that goal. We must therefore turn to the remaining potential justifications for the statutory classifications.

IV. The second purpose generally attributed to guest statutes is the prevention of collusive law suits resulting in unjust recoveries against insurance companies. For the following reasons we do not find this purpose sufficient to support the differentiations made in the statute.

That the statute is both overinclusive and underinclusive has been well documented. *See Keasling*, 217 N.W.2d at 704 (McCormick, J., dissenting). It is overinclusive by barring all automobile guest actions based on simple negligence regardless of the lack of evidence of collusion. At the same time it is underinclusive for it does nothing to prevent collusive actions incorporating the tangible benefit, intoxication or other exceptions to the statute. While the overinclusive-underinclusive dichotomy is usually applied only as part of a strict scrutiny analysis, *see, e. g., McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), it logically follows that as a classification involves extreme degrees of overinclusion and underinclusion in relation to any particular goal, it cannot be said to reasonably further that goal. *See* Tussman and ten Broek, *The Equal Protection of the Laws*, 37 Calif.L.Rev. 341, 351 (1949). At this point an evaluation of the precision with which any distinction is drawn necessarily merges the standards applicable under the two tiered approach.

Under this format we conclude that the statutory classifications in section 321.494 are so overinclusive and underinclusive in terms of preventing collusive lawsuits that they do not substantially or reasonably further that purpose. The certainty with which just claims are and would be barred and the relative ease with which collusion can be accomplished despite the statute is obvious. As the Wyoming Supreme Court stated in *Nehring v. Russell*, 582 P.2d at 79:

Yet in furthering this obvious legitimate state interest in the prevention of collusion, the statute eliminates *all* negligence causes of action for nonpaying passengers, a technique reminiscent of employing a cannon to kill a flea. Not only is such a method grossly over-inclusive, doing away with negligence actions for an entire class of persons solely because some portion thereof may be "tainted by the mischief," it is impractical as well. If the mischievous parties would be tempted to commit perjury or aid and abet a false claim on the issue of liability to allow recovery, wouldn't they be just as tempted to lie about the payment of compensation for the ride and avoid the statute in that way? *McGeehan v. Bunch*, supra. Our judicial system is not helpless in this area, as it is well armed with numerous implements for prevention and detection of fraud including the penalties for perjury as well as the tools of cross-examination and various discovery devices. As stated in *Emery v. Emery*, 1955, 45 Cal.2d 421, 431, 289 P.2d 219, 225:

"Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases."

By barring all suits by guest passengers for ordinary negligence, the guest statute exceeds all bounds of rationality and in so doing constitutes a denial of uniform operation under the Wyoming Constitution.

Other courts striking their guest statutes on equal protection grounds have reached a like conclusion. The Seventh Circuit Court of Appeals, although bound by *Silver* as to the ultimate federal disposition, reached the same result. *Sidle v. Majors*, 536 F.2d at 1158 ("[T]he relationship between the legitimate goal, the prevention of fraudulent actions, and the remedy, denying guests the right to sue, is so attenuated that it is unreasonable to eliminate causes of action of an entire class of persons merely because an indefinite portion of a designated class may file fraudulent lawsuits.").

The latter portion of the *Nehring* quotation elaborates on an additional consideration, the relative ability of the courts to expose collusive law suits through adversary proceedings. The California case cited in *Nehring* involved abrogation of California's common law doctrine of interspousal immunity, a step we recently took relying on substantially the same considerations. *See Shook v. Crabb*, 281 N.W.2d 616 (Iowa 1979). We do not base our holding on the existence of an alternative judicial means of preventing collusion, but merely note the presence of the process in the absence of a constitutionally adequate legislative solution.

V. We hold that the classifications contained in the guest statute do not rationally further the legitimate state purpose of preventing collusive recoveries from insurance companies. We further hold that the classification drawn in section 321.494 bear no rational relationship to any conceivable legitimate state purpose and is therefore violative of Article I, section 6, of the Iowa Constitution. Whatever feature or features which may once have distinguished automobile guests from guests in other conveyances or other contexts no longer exist. Our holding in *Keasling v. Thompson* is there-fore overruled and the ruling of the trial court in this case is affirmed.

■ VI. After consideration of the effect of our decision, we conclude that our holding in this case shall apply only to trials beginning on or after the date the present opinion is filed, to cases tried before the filing of this opinion in which error was preserved and the time for appeal has not expired, and those causes of action which have accrued and are not barred by any applicable statute of limitations. *See Ramey v. Ramey*, —— S.C. ——, 258 S.E.2d at 886; *see generally* § 614.1(2), The Code.

LeGRAND, Justice (dissenting).

This case is the latest chapter in the continuing saga concerning the constitutionality of section 321.494, The Code, commonly known as the guest statute.

It would serve no purpose to repeat the constitutional arguments which have been made, pro and con, almost since the statute was first enacted. Until now the law has withstood constitutional assault, although not easily. One must admire the tenacity of those who have finally convinced the majority that the court, rather than the legislature, is the proper forum to decide this public policy question.

I merely adopt what was said in the majority and concurring opinions in *Keasling v. Thompson*, 217 N.W.2d 687 (Iowa 1974). However, I cannot forego one last comment. In *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, we today hold constitutional a statute which makes an almost identical classification as the one we find fatally bad in the present case. In *Rudolph* we permit discrimination against only one class of tort victims—the malpractice patient—and in favor of only one class of defendants—the negligent doctor, nurse, or hospital. The justification for this is that it will reduce insurance premiums for these health-care practitioners and permit them to acquire malpractice insurance coverage more easily, thereby indirectly benefiting all of society.

It is difficult for me to distinguish this statute from the guest statute. If, indeed, we are to base our constitutional conclusions upon the presence or absence of insurance coverage—in itself something which is quite indefensible—then the legislative desire to protect the health-care practitioner directly and society indirectly from high insurance premiums in the one case is the same as the legislative desire to protect the host motorist directly and the motoring public indirectly from high insurance premiums in the other. Each involves a proper legislative determination, and each is entitled to the same judicial deference.

I find it impossible to reconcile these two decisions reached, ironically enough, on the same day. I voted to uphold the statute in *Rudolph*. For the same general reasons, I would uphold the guest statute. I therefore dissent.

UHLENHOPP and HARRIS, JJ., join this dissent.