# IN THE COURT OF APPEALS OF IOWA

No. 21-0492
Filed September 21, 2022

**CHRISTOPHER RYAN ALLEN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M.

Fangman, Judge.

The applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold,
Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant
Attorney General, for appellee State.

Considered by Tabor, P.J., Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**POTTERFIELD, Senior Judge.**

Christopher Allen appeals from the denial of his application for postconviction relief (PCR) following his 2015 convictions for possession of a controlled substance with intent to deliver (cocaine base) (FECR192889) and possession of a controlled substance with intent to deliver (cocaine base), ongoing criminal conduct, and a drug tax stamp violation (FECR196716).

Here on appeal, Allen argues for the first time that the disparity between sentences for crack and powder cocaine violate the Equal Protection Clauses of both the Federal and Iowa Constitutions. Allen also argues the district court wrongly denied his application for PCR, claiming he received ineffective assistance from trial counsel when counsel failed to (1) research and present the police video of the stop in FECR196716 at the suppression hearing and trial and (2) object to the district court's failure to read the verdicts in open court. He argues appellate counsel provided ineffective assistance by failing to file a timely application for further review of this court's opinion in *State v. Allen*, No. 15-0708, 2016 WL 7395726, at *6 (Iowa Ct. App. Dec. 21, 2016) with the Iowa Supreme Court.

## I. Background Facts and Proceedings.

*FECR192889.* In August 2013, police executed a search warrant at Allen's home in Waterloo, Iowa. During the search, officers found several rocks of crack cocaine, cash, a digital scale, and plastic sandwich bags with the corners removed. Officers then obtained a search warrant to search the apartment of a woman identified as Allen's girlfriend. In the apartment they found receipts and tickets documenting trips between the Waterloo area and Chicago, Illinois and a large amount of cash. In an interview with police officers, Allen said he received the

cash from a settlement; he also admitted to selling crack cocaine in Chicago but denied selling it in Iowa. Based on these and other facts, the State charged Allen on August 15, 2013, with possession of a controlled substance with intent to distribute and/or conspiracy to possess a controlled substance with intent to distribute (cocaine base).

Allen moved to suppress evidence obtained during the execution of the search warrant, and the district court denied his motion.

*FECR196716.* In early February 2014, a confidential informant told police Allen was transporting crack cocaine from Chicago to Waterloo by bus while concealing the crack cocaine in his pants. Because Allen owed the confidential informant money for drugs, the police arranged a controlled transaction between the confidential informant and Allen, during which Allen paid fifty dollars to the confidential informant, although no narcotics were exchanged. The confidential informant also told the officers Allen was going to Chicago to acquire additional narcotics. As a result of this information, the officers obtained a warrant to track the location of Allen's cell phone, which notified the officers when Allen travelled back from Chicago to Waterloo by bus on February 21, 2014. Officers observed Allen disembark the bus without luggage and enter a vehicle as a passenger.

Police officers ultimately initiated a stop of the vehicle and made contact with both the driver and Allen, who was a passenger. After searching the driver and the interior of the vehicle and conducting a pat-down of Allen, officers employed a K9 to search the interior of the vehicle. Based on the dog indicating on the seat where Allen had been sitting, Allen was taken to the local police station and strip-searched. Cocaine base was found sewn into his underwear.

Allen moved to suppress the evidence, asserting "law enforcement officers did not have probable cause to conduct the traffic stop, detain and subsequently strip search" him. The district court denied the motion, concluding officers had probable cause to initiate the stop because of an equipment violation—the officer believed a taillight was not functioning; officers were allowed to search the interior of the vehicle based on the consent of the driver, who owned the vehicle; and, once the K9 alerted on the seat where Allen had been sitting, officers had probable cause to search Allen's person.

***Cases Combined.*** In December 2014, Allen waived his right to a jury trial in both FECR192889 and FECR196716.

In a trial on the minutes of evidence, the court found Allen guilty of two counts possession of a controlled substance with intent to deliver (cocaine base),[1] ongoing criminal conduct, and a drug tax stamp violation. He was sentenced to fifty years imprisonment with a one-third mandatory minimum for the class "B" drug offense, and all other sentences were to be served concurrently.[2]

Allen appealed, challenging the district court's denial of his motion to suppress evidence in FECR196716. Allen also alleged that he received ineffective assistance from trial counsel, including a claim that he believed he was receiving a trial to the bench—rather than just a trial on the minutes of evidence—when he

---

[1] In FECR196716, the court concluded Allen possessed 121.17 grams of crack cocaine, a class "B" felony, in violation of Iowa Code section 124.401(1)(a)(3) (2014). In FECR192889, the court concluded Allen possessed .91 grams of crack cocaine, a class "C" felony, in violation of Iowa Code section 124.401(1)(c)(3) (2013).

[2] Allen was sentenced to ten years for the other drug offense, twenty-five years for ongoing criminal conduct, and five years for the drug tax stamp violation.

waived his right to a jury trial. A panel of this court affirmed the district court's denial of the suppression motion, denied Allen's claim of ineffective assistance regarding his lack of presence for the "trial on the minutes of testimony," and preserved his claim counsel was ineffective in failing to ensure his right to a bench trial. *See State v. Allen*, No. 15-0708, 2016 WL 7395726, at *6 (Iowa Ct. App. Dec. 21, 2016).

Allen filed his PCR application in 2017. After a number of amendments and continuances, a trial on the application took place in March 2021. At the trial, counsel for Allen listed the seventeen issues Allen wished to raise on PCR. As relevant here, the district court considered whether trial counsel provided ineffective assistance (1) by failing to admit the video of the stop in FECR196716 at the suppression hearing and trial; (2) by "not fil[ing] for further review after [t]rial on the [m]inutes; and (3) because "the verdict was not announced in open court." The district court reviewed the police video from the stop, which had not been previously introduced into evidence. In its written ruling, the court detailed what it saw in the video before concluding:

> [T]he Court finds very little value to the actual video other than corroborating the stop occurred, the deputy removed the passengers from the vehicle and both a search and a search by the K-9 was conducted. The Court does not find ineffective assistance by [trial counsel] in not playing the video at the motion to suppress nor not admitting the video at the Trial on the Minutes based upon what the video actually shows. Counsel is not required to offer evidence that is not relevant or probative and no prejudice resulted to Mr. Allen.

In considering whether counsel should have filed for further review after the trial on the minutes, the court noted that while trial counsel did not file any post-trial motions, Allen filed a pro se motion in arrest of judgment, which he ultimately

withdrew. Because "Allen [did] not indicate what other post-trial motions he believed [trial counsel] should have filed after the Trial on the Minutes," the district court concluded he failed to prove he received ineffective assistance. Finally, the court noted that Allen signed a waiver of jury trial, which included the statement, "If I waive my right to a jury trial, the case will be tried before a judge who alone will decide if I am guilty or innocent and will file a decision in writing." The court concluded this "suggest[ed] Mr. Allen was aware the [c]ourt would do a decision in writing rather than in person" but, even if that was not true, the proper remedy would be to "vacate the conviction, vacate the sentence, and remand the case to allow the [d]istrict [c]ourt to announce the verdict in a recorded proceedings in open court pursuant to [Iowa Rule of Criminal Procedure] 2.17(2)." The district court concluded it did not have the authority to remand the case. It also concluded that the error was the trial court's—not trial counsel's—which meant it "did not amount to ineffective assistance of *counsel*." (Emphasis added.)

The district court denied Allen's PCR application. He appeals.

## II. Discussion.

### A. Equal Protection.

In 2015, at the time Allen was convicted and sentenced, possessing "[m]ore than fifty grams" of cocaine base (i.e. crack cocaine) with intent to deliver was a class "B" felony that resulted in a fifty-year prison sentence. *See* Iowa Code § 124.401(1)(a)(3) (2015).[3] In contrast, to get the same sentence for possessing

---

[3] Allen committed the various crimes in 2013 and 2014; he was convicted and sentenced in 2015. Because there were no substantive changes to the subsections at issue here and for ease, all references going forward are to the 2015 Iowa Code unless specifically noted.

powder cocaine with the intent to deliver, Allen would have had to possess "[m]ore than 500 grams" of powder cocaine. *See* Iowa Code § 124.401(1)(a)(2)(b). Here on appeal, Allen argues for the first time that the disparity between sentences for possessing the same amounts of crack and powder cocaine violate the Equal Protection Clauses of both the Federal and Iowa Constitutions.[4] *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. As the State concedes, an allegation that a sentence is illegal may be brought at any time. *See State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012). And a claim that a sentence is unconstitutional constitutes a claim that the sentence is illegal. *See State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009). We review constitutional questions de novo. *Id.* at 869.

The Equal Protection Clauses "require[] that 'similarly situated persons be treated alike under the law.'" *Wright v. Iowa Dep't of Corrs.*, 747 N.W.2d 213, 216 (Iowa 2008). "The first step in determining whether a statute violates equal protection is to determine whether the statute distinguishes between similarly situated persons." *Id.* If it does, "the court must then determine what level of review is required—strict scrutiny or rational basis." *Id.* "A statute is subject to strict-scrutiny analysis . . . when it classifies individuals 'in terms of their ability to exercise a fundamental right or when it classifies or distinguishes persons by race or national origin.'" *Id.* (citation omitted). "All other statutory classifications are subject to rational-basis review in which case the defendant must show the

---

[4] While Allen raises the issue under both constitutions, he does not suggest separate analysis is appropriate or necessary. And our supreme court generally "view[s] the federal and state equal protection clauses as 'identical in scope, import, and purpose.'" *Varnum v. Brien*, 763 N.W.2d 862, 878 n.6 (Iowa 2009) (citation omitted).

classification bears no rational relationship to a legitimate government interest."

*Id.*

We assume without deciding that offenders who possess 121.17 grams of crack cocaine with the intent to deliver (as Allen did) are similarly situated to those who possess 121.17 grams of powder cocaine with the intent to deliver.[5]  *See State v. Wade*, 757 N.W.2d 618, 625 (Iowa 2008) ("[I]t is the nature of the offense and not its criminal classification that determines whether offenders are similarly situated.").  Yet a person who possessed 121.17 grams of crack cocaine would receive a fifty-year sentence, while a person possessing 121.17 grams of powder cocaine would receive a sentence of twenty-five years.  *Compare* Iowa Code § 124.401(1)(a)(3), *with id.* § 124.401(1)(b)(2)(b); *see also id.* § 902.9.  So section 124.401[6] treats similarly situated people differently.

---

[5] "Crack cocaine was a relatively new drug when the [Anti-Drug Abuse Act of 1986] was signed into law," and "Congress apparently believed that crack was significantly more dangerous than powder cocaine." *Kimbrough v. United States*, 552 U.S. 85, 95 (2007).  But "[s]ome of the information available to Congress in retrospect proved not to be empirically sound."  United States Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy*, at 90 (May 2002), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/drug-topics/200205-rtc-cocaine-sentencing-policy/200205_Cocaine_and_Federal_Sentencing_Policy.pdf (last visited Aug. 11, 2022)).

For example, we now know that, once in the brain, crack and powder cocaine have the same physiological and psychological effects.  U.S. Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy*, at 64 (May 2007), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/drug-topics/200705_RtC_Cocaine_Sentencing_Policy.pdf (last visited Aug. 10, 2022) (hereinafter 2007 Report).  And an offender who possesses one gram of crack cocaine possesses about the same number of doses—possibly fewer—than an offender who possesses one gram of powder cocaine.  *See id.* at 63 ("With respect to doses, one gram of powder cocaine generally yields five to ten doses, whereas one gram of crack cocaine yields two to ten doses.").

[6] In 2017, the Iowa legislature amended Iowa Code section 124.401 as it pertains to amount of crack cocaine necessary to trigger the various levels of felonies.

Allen maintains we should apply strict scrutiny to the statute, pointing to statistics that suggest the disparities in sentencing penalties contribute to the disproportionate incarceration of African American people:

**Table 3: Cocaine Related Charges and Prison Entries Pre- and Post-2017 (White and African American Only)**

| | Charges | | | | Prison Entries | | | |
|---|---|---|---|---|---|---|---|---|
| | White | | African American | | White | | African American | |
| | n | % | n | % | n | % | n | % |
| **Prior to Law Change (SFY15-17)** | | | | | | | | |
| All Powder related charges | 95 | 31.3% | 135 | 44.4% | 15 | 12.7% | 84 | 71.2% |
| All Crack related charges | 14 | 6.2% | 186 | 82.3% | 18 | 7.1% | 230 | 90.9% |
| **After Law Change (SFY18-20)** | | | | | | | | |
| All Powder related charges | 97 | 30.0% | 158 | 48.9% | 12 | 16.0% | 45 | 60.0% |
| All Crack related charges | 15 | 8.2% | 143 | 77.7% | 17 | 11.4% | 128 | 85.9% |

Iowa Dep't of Hum. Rts.-Div. of Crim. Just. & Juv. Just. Plan. & Stat. Analysis Ctr., *Justice Advisory Board 2021 Annual Update to Iowa's Three-Year Criminal and Juvenile Justice Plan* (Dec. 1, 2021), https://humanrights.iowa.gov/criminal-juvenile-justice-planning/publications (last visited Aug. 11, 2022).

---

*See* 2017 Iowa Acts ch. 122, §§ 7–9. Since the changes took effect, an offender must possess more than two hundred grams of crack cocaine with the intent of delivering it to be sentenced to fifty years. *See* Iowa Code § 124.401(1)(a)(3) (2022). For his 121.17 grams, Allen would have been sentenced to twenty-five years. *See id.* § 124.401(1)(b)(3). But a discrepancy between the amount of crack cocaine and powder cocaine necessary to trigger a certain sentence still exists. *Compare* Iowa Code § 124.401(1)(a)(2)(b) (providing that an offender will be sentenced to fifty years for possessing "[m]ore than five hundred grams" of powder cocaine), *with id.* § 124.401(1)(a)(3) (providing that an offender will be sentenced to fifty years for possessing "[m]ore than two hundred grams" of crack cocaine).

But for strict scrutiny analysis to apply, "the statute must reflect a disparate treatment of the subject classification, not merely a disparate impact." *State v. Daniels*, No. 14-1442, 2016 WL 5408279, at *4 (Iowa Ct. App. Sept. 28, 2016) (citing *King v. State*, 818 N.W.2d 1, 24 (Iowa 2012)). While a significantly greater percentage of those charged and sentenced for crack-cocaine-related charges are African American, the statute itself treats African-American dealers of crack cocaine and white dealers of crack cocaine the same. The distinction within the statute centers on the substance that is possessed with the intent to deliver—not the race of the person taking the action. Because the statute itself does not classify based on race, and disparate impact alone is not enough to trigger strict scrutiny, we apply rational basis. *See id.* at *4–5; *see also Wright*, 747 N.W.2d at 216.

When we review a statute for rational basis, "the defendant must show the classification bears no rational relationship to a legitimate government interest." *Wright*, 747 N.W.2d at 216.

> [T]he Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 107 (2003) (alteration in original) (citation omitted). Stated another way, we determine "whether the classifications drawn in a statute are reasonable in light of its purpose." *McLaughlin v. Florida*, 379 U.S. 184, 191 (1964). "Statutes are cloaked with a strong presumption of constitutionality," so Allen "carries a heavy burden" in

attempting to rebut this presumption. *In re Morrow*, 616 N.W.2d 544, 547 (Iowa 2000).

The same 2007 Report that debunked a number of wrong assumptions about crack cocaine, *see Kimbrough*, 552 U.S. at 97–98, states that the way crack cocaine is typically used makes it "more potentially addictive to *typical* users." 2007 Report, at 63. Because "[s]moking crack cocaine produces quicker onset of shorter-lasting and more intense effects than snorting powder cocaine," there is "a greater likelihood that the user will administer the drug more frequently . . . and develop an addiction." *Id.* So, while "crack cocaine and powder cocaine are manufactured from the same compound of origin and their pharmacological roots are identical," *id.* at B-20, it does not follow that the societal impact of dealing the two substances is the same. Because crack is more potentially addictive than powder cocaine, and drug addiction is generally harmful to society,[7] it is reasonable to set a longer period of imprisonment for dealing crack cocaine—as a deterrent to the practice. *See, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 672 (1983) (recognizing "[s]tate[s] clearly [have] an interest in punishment and deterrence").

Because there is a rational basis for the disparity in sentences between crack and powder cocaine dealers, Allen has not shown that section 124.401 violates equal protection.

---

[7] "The consequences of illicit drug use are widespread, causing permanent physical and emotional damage to users and negatively impacting their families, coworkers, and many others with whom they have contact. Drug use negatively impacts a user's health, often leading to sickness and disease." U.S. Dep't of Just., Nat'l Drug Intel. Ctr., *National Drug Threat Assessment*, at 3 (Feb 2010), https://www.justice.gov/archive/ndic/pubs38/38661/38661p.pdf (last visited Aug. 11, 2022).

**B. Ineffective Assistance of Trial Counsel.**

Allen challenges the PCR court's ruling denying his claims that he received ineffective assistance from trial and appellate counsel.

> To prevail on a claim of ineffective assistance of counsel, the applicant must demonstrate both ineffective assistance and prejudice. Both elements must be proven by a preponderance of the evidence. However, both elements do not always need to be addressed. If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently.

*Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (internal citations omitted). Our review is de novo. *Id.* at 141.

**1. Motion to Suppress.**

Allen argues trial counsel breached an essential duty in failing to introduce into evidence at the suppression hearing and trial on the minutes the police video from the stop in FECR196716. In his PCR application, Allen claimed he was prejudiced by the fact the court never saw the video of the stop and the subsequent pat-down of his person because it would show "the officers and [S]tate were lying." He maintained the video would have shown "[t]hat there was no 'hit' on the passenger seat by any drug dog" and "that [he] complied with the frisk with no problems."[8] In contrast, Allen argues in his appellate brief that the video shows

---

[8] Allen also claimed that the video would establish that the traffic stop was pretextual, but as this issue was ruled upon by this court in Allen's direct appeal, we do not consider it. *See Allen*, 2016 WL 7395726, at *3 ("Regardless, 'even if we were to find the stop was pretextual, there was still no [Fourth Amendment] violation because probable cause—not the motivation of the arresting officer— determines whether the stop is valid.'" (citation omitted)); *see also* Iowa Code § 822.8 (Any ground finally adjudicated . . . in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application . . . .").

the ground was slushy, which supports his statement to the officer at the scene of the stop—as included in the minutes of evidence—that he was not spreading his legs because "it was slippery and he didn't want to fall."

We agree with the PCR court that the video is of limited value. The camera appears to be mounted on the dashboard of the police vehicle, which pulled in and parked behind the vehicle in which Allen was a passenger. The vantage point does not allow us to see inside of the stopped car at the time the K9 performed its search to determine whether or not it "hit" on Allen's seat. And the audio consists mostly of the K9's panting and barking, along with some radio noise. While we can tell that the officer conducted a pat-down of Allen, we cannot ascertain whether there were any difficulties in completing it or whether the officer asked Allen to take a wider stance. In other words, the video does not undermine the testimony the officer gave at the suppression hearing that he was unable to pat down Allen's "upper thigh area . . .partially due to his size, but also because he wouldn't spread his legs"; nor does it establish that the State or officers lied. Finally, we agree that the video shows the ground is snowy or slushy, but it is not clear to us how a "valid" justification for not spreading his legs would impact the court's finding of probable cause for a more thorough search elsewhere when the dog "hit" on the seat Allen just vacated, the confidential informant previously told officers Allen hid narcotics in his pants, and—for whatever reason—Allen would not spread his legs for a pat-down search.

We cannot say there is a reasonable probability that the admission of the police video would have changed the outcome of either the suppression hearing or the trial on the minutes, so Allen has not established that he was prejudiced by

counsel's failure to introduce the video into evidence. *See id.* at 143 ("To [prove prejudice], the applicant must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (citation omitted)).

### 2. Reading Verdicts.

Allen claims trial counsel breached an essential duty when he failed to ensure the court's verdict be read in open court. *See State v. Jones*, 817 N.W.2d 11, 19 (Iowa 2012) ("[W]e interpret [Iowa Rule of Criminal Procedure] 2.17(2) to require the court to reconvene the proceedings and announce its verdict in open court, unless the defendant has waived his or her right to receive the verdict in open court.").

We recognize that the waiver Allen signed informed him "the case will be tried before a judge who alone will decide if I am guilty or innocent and will file a decision in writing." That statement does not explicitly provide that the decision will *only* be made in writing (rather than filed in writing and announced in open court). But even if Allen did not waive his right to have the verdict read in open court, the court remedied any defect by its later reading of the verdict at sentencing. *See id.* at 21 ("We . . . agree with the state court decisions holding the defendant is not entitled to further relief if the court later reads the verdict at sentencing."). Allen cannot show he was prejudiced by trial counsel's failure to ensure the district court announced its verdict in open court.

### 3. Application for Further Review.

Allen argues that he received ineffective assistance from appellate counsel because counsel did not file a timely application for further review after this court

issued an opinion in Allen's direct appeal. *See* Iowa R. App. P. 6.1103 (requiring application for further review "to be filed within 20 days following the filing of the court of appeals decision."). We recognize that this is the same claim Allen raised in at least one of his applications for PCR, but it is not how the issue was framed to the district court at the PCR trial and not the issue the court actually ruled upon.

At the PCR trial, Allen's counsel told the court Allen's claim was he received ineffective assistance because "[c]ounsel didn't file for further review and do a brief within 20 days of the [c]ourt's ruling on the trial on the [m]inutes." Allen was asked at the end of his PCR counsel's recitation of his claims, "Are those the issues that you see before the [c]ourt today?" and Allen responded, "Yes." The court then ruled on that issue—whether trial counsel provided ineffective assistance by failing to file for an application for further review following the district court's ruling.

Because Allen never got a ruling on the issue he now raises on appeal, the issue has not been preserved for our review. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)); *State v. Krogmann*, 804 N.W.2d 518, 524 (Iowa 2011) ("[W]hen a court fails to rule on a matter, a party must request a ruling by some means."). And he does not claim PCR counsel provided ineffective assistance for how he presented the issue to the district court. *See Harryman v. State*, No. 14-1334, 2015 WL 4935640, at *5 (Iowa Ct. App. Aug. 19, 2015) (recognizing an applicant may raise an ineffective-assistance-of-PCR-counsel claim on appeal from the denial of a PCR application to bypass error preservation). So we do not reach the merits of this issue.

We affirm the district court's denial of Allen's PCR application.

**AFFIRMED.**

Badding, J., concurs; Tabor, P.J., partially dissents.

**TABOR, Presiding Judge** (concurring in part and dissenting in part).

Like the majority, I believe that Iowa's laws criminalizing the possession of crack and powder cocaine treat similarly situated people differently. I also agree that under current law, we cannot apply strict scrutiny without a showing our legislature enacted the powder-crack sentencing disparities with a discriminatory purpose.[9] But I respectfully dissent from the majority's determination that a rational basis exists for imposing ten times longer sentences for crack-cocaine convictions than for powder-cocaine offenses.

The State points us to a line of our unpublished cases rejecting similar equal protection challenges. *See, e.g.*, *State v. Daniels*, No. 14-1442, 2016 WL 5408279, at *4–5 (Iowa Ct. App. Sept. 28, 2016); *State v. Caldwell*, No. 02-

---

[9] This is true because federal cases "have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact." *See Washington v. Davis*, 426 U.S. 229, 239 (1976); *but see See Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886) (noting that where a law is facially neutral, "if it is applied and administered by public authority with an evil eye and an unequal hand" the law's "denial of equal justice is still within the prohibition of the constitution" and striking down a facially neutral law based solely on evidence of a stark racial disparity in the law's application).

But the doctrine requiring proof of discriminatory intent "has been widely criticized for the way it prevents an inquiry into outcomes and makes it impossible to recognize systemic discrimination as a legal problem." Addie C. Rolnick, *Indigenous Subjects*, 131 Yale L.J. 2652, 2701 (2022). In response, some legal theorists advocate an antisubordination approach that "recognizes the institutional and subtle nature of racism and supports judicial invalidation of facially neutral practices that sustain racial inequality, regardless of the intent." Darren Lenard Hutchinson, *"With All the Majesty of the Law": Systemic Racism, Punitive Sentiment, and Equal Protection*, 110 Cal. L. Rev. 371, 420 (2022). But Allen does not advance that theory today. Yet, short of strict scrutiny, I believe we should follow the lead of our neighbors to the north and apply a "stricter standard of rational basis review" under our state constitution because "the challenged classification appears to impose a substantially disproportionate burden on the very class of persons whose history inspired the principles of equal protection." *See State v. Russell*, 477 N.W.2d 886, 889 (Minn. 1991).

1405, 2003 WL 21921047, at *2–3 (Iowa Ct. App. Aug. 13, 2003). But these non-binding cases predate the law's change in 2017. The State fails to acknowledge "changing conditions and circumstances may make a statute which was constitutional when enacted unconstitutional in the sense that it could not be enacted today." *Chicago & N.W. Ry. Co. v. Fachman*, 125 N.W.2d 210, 215 (Iowa 1963). Not even our state legislature believes there is a rational basis for the old law any more. Five years ago, the legislature reduced the sentencing disparity between crack and powder cocaine from ten times to two-and-one-half times. As Allen notes, in reducing the disparity, lawmakers from both sides of the aisle recognized the outsized impact that severe punishment for crack cocaine has had on Black Iowans.[10]

The State insists that the legislature's lowering of the ratio was not an acknowledgment of an equal protection problem—pointing to the continuing disparity. But the two-and-one-half-to-one disparity still on the books does not undermine Allen's point. In its role, the legislature deals in compromises to reach solutions. By contrast, our role as "the judicial department [is] to determine 'whether any department has exceeded its constitutional functions; and to restrain them from exceeding their power and authority.'" *Luse v. Wray*, 254 N.W.2d 324, 327 (Iowa 1977) (quoting 16 C.J.S. Constitutional Law § 144, at 688).

In refuting Allen's equal protection challenge, the State claims that the legislature, before 2017, could have rationally decided to punish crack-cocaine

---

[10] *See* Floor Statements of Senator Janet Peterson (D-Des Moines) and Senator Julian Garrett (R-Indianola), Senate Video 04/19/2017 at 7:54:15–77:55:40, https://www.legis.iowa.gov/legislation/BillBook?ga=87&ba=sf445.

crimes more harshly because of the drug's "unique threats." Without citing any supporting authority, the State asserts that because crack "can be sold in smaller doses at cheaper prices, it poses a higher risk of consumption and marketability. This in turn can produce violent competition among its traffickers, and an unacceptable risk to Iowa communities." The majority lands on a slightly different rationale for the harsher punishment: crack is "more potentially addictive than powder cocaine."

In my view, neither the basis floated by State nor the one offered by the majority meets of our constitution's demands. In Iowa, rational basis "is not toothless." *LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 860 (Iowa 2015) (citing *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 9 (Iowa 2004)). We must remember "the deference built into the rational basis test is not dispositive because this court engages in a meaningful review of all legislation challenged on equal protection grounds by applying the rational basis test to the facts of each case." *Varnum v. Brien*, 763 N.W.2d 862, 879 (Iowa 2009).

In examining an equal protection claim under rational basis, "there is a point beyond which the State cannot go . . . [it] may not resort to a classification that is palpably arbitrary." *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 527 (1959). To decide whether a classification is arbitrary, "we must take into consideration matters of common knowledge and common report and the history of the times." *Miller v. Boone Cnty. Hosp.*, 394 N.W.2d 776, 779 (Iowa 1986) (citation omitted). Neither the majority's concentration on crack's addictive qualities nor the State's

focus on violence justifies the prior ten-to-one sentencing disparity condemning Allen to another twenty-five years in prison.[11]

Let's take the relative risks of addiction first. The bottom line in the 2007 report quoted by the majority is that "pharmacologically 'both forms [of cocaine] cause identical effects.'" *See United States v. Gardner*, 20 F. Supp. 3d 468, 472 (S.D.N.Y. 2014) (quoting *United States Sent'g Comm'n, Rep. to Cong.: Cocaine and Fed. Sent'g Pol'y* at 62 (May 2007)); *see also United States v. Lee*, 468 F. Supp. 3d 1103, 1108–09 (N.D. Iowa 2020) (citing *Gardner* approvingly). True, the 2007 report noted "the possibility, based largely on anecdotal evidence, that 'the risk of addiction and personal deterioration may be greater for crack cocaine than for powder cocaine' since the two are administered differently." *Gardner*, 20 F. Supp. 3d at 471–72. But the sentencing commission determined as early as 2002 that "[p]recisely quantifying this difference is impossible and, as a result, determining an appropriate degree of punishment differential to account for any difference in addiction potential is difficult." *Id.* at 472 (quoting *United States Sent'g Comm'n, Rep. to Cong.: Cocaine and Fed. Sent'g Pol'y* at 62 (May 2002)). As one federal district court concluded: "At present, the claim that crack cocaine is more addictive than powder cocaine because of the way it is administered remains in the realm of conjecture, unsupported by any serious scientific study." *Id.*

Like the risk of addiction, the State's speculation about "violent competition among [crack] traffickers" fails to supply a rational basis for the prior ten-to-one

---

[11] In Iowa, we assess "the credibility of the asserted factual basis for the challenged classification rather than simply accepting it at face value." *LSCP*, 861 N.W.2d at 860 (quoting *Fitzgerald*, 675 N.W.2d at 8, 8 n.4).

sentencing disparity. The State points to no studies showing differing rates of violence associated with crack and powder cocaine distribution. And even if the State had identified such studies, it would be difficult to isolate the violence associated with crack cocaine sales from other community influences. Indeed, "it is well established that crack cocaine is preferred over powder cocaine in poor, predominantly African–American communities, communities that have long tended to suffer from higher levels of violent crime." *Id.* at 472–73 (finding "no rational support" for federal ratio of 18:1 and treating quantity of crack cocaine under Gardner's offenses as if it were equivalent quantity of powder cocaine under the sentencing guidelines); *see also United States v. Samas*, No. 3:18-cr-00296 (JAM), 2021 WL 5996815, at *2 (D. Conn. Dec. 7, 2021) ("Of course, crack cocaine is subject to far more severe penalties than powder cocaine, even though it has long been clear that *there is no good reason* for this distinction and that the distinction has a racially disproportionate impact." (emphasis added)).

It is our constitutional obligation to determine whether the classifications drawn in Iowa Code section 124.401 (2015) violate the state equal protection clause. *See Bierkamp v. Rogers*, 293 N.W.2d 577, 581 (Iowa 1980) (discussing article I, section 6 of the Iowa Constitution). "In so doing we accord considerable deference to the judgment of the legislature. Yet this deference is not, in and of itself, necessarily dispositive and changes in underlying circumstances may vitiate any rational basis." *Id.* Granted, classifications do not deny equal protection by resulting in "some inequality." *Id.* But, as here, if "the lines drawn do not rationally advance a government purpose" the legislation defies the constitution. Because Allen has shown that the ten-to-one difference in classification between offenders

sentenced for possessing crack cocaine and offenders sentenced for possessing powder cocaine bears no rational relationship to a legitimate government interest, section 124.401 violates the equal protection clause of our state constitution. Allen's fifty-year term is unconstitutional, so I would reverse and remand for resentencing.